T. QUINCY BROWNE, as Survivor, Appellant, *v.* ROBERT W.
PATERSON et al., Respondents.

CONTRACT — CONSTRUCTION OF PROVISION AS TO SHIPMENT OF GOODS.
The recital, "bought to be a March & or April, 1889, shipment," in a
bought and sold note of a cargo of nitrate of soda to be shipped from
South America by a chartered vessel named, and which is further
described as "also bought to test" by a test specified, does not amount to
a warranty or condition precedent that shipment be made during such
months and entitle the vendee to refuse a June shipment, since the word
"bought" refers to the vendors and identifies the cargo as that previously
bought by them, where both parties are aware that American contracts
for the sale of the commodity are usually based upon executory South
American contracts, the details of which as to quantity, place and time of
shipment are important, if not controlling, factors in determining the
provisions of American contracts.

*Browne* v. *Paterson*, 36 App. Div. 167, reversed.

(Argued December 6, 1900; decided February 1, 1901.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered March

7, 1899, reversing a judgment in favor of defendants entered upon the report of a referee, and granting a new trial.

On February 19th, 1889, the firm of Hemenway & Browne, of which the plaintiff is the survivor, and the firm of Knudson, Paterson & Co., of which the defendants are survivors, entered into a contract, of which the following is a copy :

" T. F. Edmands & Co.,

" P. O. Box 5111.                 " 61 Kilby Street,

" Boston, *February* 19, 1889.

" Sold to Messrs. Knudson, Paterson & Co., for account of Messrs. Hemenway & Browne, one-half of the cargo per Wachusett chartered to load not exceeding twenty-two hundred (2200) tons, usual good merchantable quality Nitrate of Soda, to arrive at New York, bought to be a March & or April, 1889, shipment from West Coast, South America, also bought to test by South American assay not under 96% Nitrate nor over $1\frac{1}{4}$% Salt, if of inferior test sellers to allow full Coast allowance received. Price two and one-twentieth (2 1-20) cents per pound, payable in gold or its equivalent, cash in thirty (30) days from average delivery. Deliverable in good order in single bags as landed ex vessel in New York. Actual weight and $1\frac{1}{2}$% tare. No arrival, no sale. No responsibility taken unless by special agreement.

" T. F. EDMANDS & CO.,<br>" *Brokers.*

" Through Messrs. Gerard & Brown.

(Written across the face.)
       " Accepted, Knudson, Paterson & Co."

In addition to the language quoted this contract contains the following marginal note :

" Should vessel named in this contract be lost before reaching loading ports, another vessel or vessels to be substituted for same shipment or as near thereto as practicable."

On the 20th day of February, 1889, the same parties entered into a contract for the balance of the cargo. Except

as to date the second contract was identical with the first. On the 4th day of June, 1889, the firm of Knudson, Paterson & Co., whom we will hereafter refer to as the defendants, having been informed that the vessel described in said contract did not commence loading in April, and would probably not sail until the middle of June, notified Hemenway and Browne, whom we will hereafter call the plaintiffs, "that said contracts calling for March-April shipments are void." To this the plaintiffs replied, stating in substance that they did not call for March-April shipments, and the defendants thereupon reiterated their claim. The vessel arrived in New York on the 31st day of December, 1889, and plaintiffs at once tendered her cargo to the defendants, who refused to receive it on the same grounds expressed in the preceding June. The plaintiffs thereupon advertised the cargo for sale at auction, and it was sold at considerable loss to them, the amount of which they seek to recover in this action. The facts relating to the charter of the vessel, the loading of her cargo and her subsequent voyage are briefly as follows : On the 13th day of February, 1889, the plaintiffs entered into a "charter party" with the owners of the ship " Wachusett," which was therein described, and wherein it was agreed that the vessel, after discharging her outward cargo at the port of Coquimbo, should proceed in ballast with all convenient speed to the port of Iquique, Caleta Buena or Pisagua, where and/or at one adjacent by-port, charterers agree to ship, and the masters to receive, a full and complete cargo of nitrate of soda in bags. Forty lay days were allowed for loading the same to commence not before March 15, 1889. It does not appear that either the plaintiffs or the defendants had knowledge of the details of the outward charter of the " Wachusett." The plaintiffs knew that she was bound for Coquimbo with coal, and the defendants had been informed that she was at some other port than the loading port. At the time the charter party was entered into between the plaintiffs and the owners, the " Wachusett" was in the port of Coquimbo laden with 2,000 tons of coal, under a charter which limited the dis-

charge of her cargo to forty tons per day. She began discharging the same on the 5th of February, 1889, sailed from Coquimbo on April 9th and arrived at Caleta Buena on April 22nd. On April 29th she had discharged her ballast, and gave notice of readiness to load. On April 30th she loaded 480 bags of nitrate of soda, and thereafter continued until June 18th, 1889, when she finished loading. She sailed on June 20th, 1889, and on the fourth or fifth day out she sprang a leak, was forced to put into Callao, Peru, for repairs, and was there detained for three months. After having been repaired she proceeded on her voyage, arriving in New York on the 31st day of December, 1889.

The material facts and circumstances peculiar to the trade in nitrate of soda, which bear upon the contracts to be construed, are as follows: It was the custom for the vendors of nitrate of soda in large quantities in the American market to make such sales after having themselves entered into executory contracts for the purchase of the product on the west coast of South America, to be delivered to them there or shipped according to their order. This usage was known to both parties and this sale was of that character. The plaintiffs, through their South American correspondents, made executory contracts with certain parties for nitrate of soda exceeding in amount the cargo referred to in these contracts, and the sale to the defendants was made upon the basis of such prior purchases made by the plaintiffs. The contracts under which the plaintiffs purchased were dated February 9th and 12th, 1889, respectively. The first provided for the delivery of the quantity thereby purchased by means of boats, rafts or wharves alongside the boats or launches of the loading vessel outside of the surf at the port of Caleta Buena, the purchasers having two months' time from March 1st in which to send a vessel for the nitrate. The second was in the same form except that the time limited for shipment was two months from April 1st, 1889.

*John S. Melcher* and *William M. Ivins* for appellant. The words " Bought to be a March and/or April shipment "

do not, either of themselves, or construed in the light of the remainder of the contract, of the actual intention of the parties as disclosed by the evidence, or of the custom of the trade, constitute a warranty by the sellers to ship the goods in those months. (*Bowes* v. *Shand,* L. R. [2 App. Cas.] 455; *Hill* v. *Blake,* 97 N. Y. 216; *Nelson* v. *S. M. Ins. Co.,* 71 N. Y. 459; *Behn* v. *Burness,* 3 B. & S. 751; *Hawes* v. *Lawrence,* 4 N. Y. 345; *Smith* v. *Myers,* L. R. [5 Q. B. Div.] 427; *E. S. & W. Co.* v. *Littlejohn,* 164 N. Y. 187; *Henley* v. *B. I. Co.,* 14 Blatchf. 522; *Trowbridge* v. *Harrison,* 21 N. Y. Supp. 917.) There is nothing in the contract that warrants the arrival of the *Wachusett.* at Caleta Buena in time to ship the nitrate wholly in March or April. (*Behn* v. *Burness,* 3 B. & S. 751; *Lowber* v. *Bangs,* 2 Wall. 728; *Corkling* v. *Massey,* L. R. [8 C. P.] 395; *Fraser* v. *Harbeck,* 4 Robt. 179; *Cunningham* v. *Judson,* 100 N. Y. 179; *Iasigi* v. *Rosenstein,* 141 N. Y. 414.)

*Charles E. Rushmore* and *Lawrence Kneeland* for respondents. Stipulations as to time of shipment or loading in contracts for sale of merchandise to arrive are deemed conditions, the non-performance of which relieves the vendee from the obligation to receive. (*Shand* v. *Bowes,* L. R. [1 Q. B. Div.] 473; L. R. [2 App. Cas.] 455; *Cunningham* v. *Judson,* 100 N. Y. 179; *Hill* v. *Blake,* 97 N. Y. 216; *Welsh* v. *Gossler,* 89 N. Y. 540; *Clark* v. *Fey,* 121 N. Y. 470.) The words "bought to be" referred to the terms upon which defendants contracted to purchase from plaintiffs, and shipment within the time prescribed was a condition precedent, the failure to perform which relieved the defendants from all liability under the contract. (Jones on Com. & Trade Cont. 312; *Jackson* v. *B. W. W. Co.,* 91 Hun, 435; *Wright* v. *Williams,* 20 Hun, 320; *Barney* v. *Newcomb,* 63 Mass. 46; *Ledon* v. *Havemeyer,* 121 N. Y. 179; *Scaife* v. *Farrant,* L. R. [10 Exch.] 358; Phillips on Ins. §§ 315–318; *McSwiney* v. *R. E. A. Co.,* L. R. [14 Q. B. Div.] 634, 646; *Norrington* v. *Wright,* 115 U. S. 188; *Lowber* v. *Bangs,* 2 Wall. 728; *Bank of Montreal* v. *Reck-*

*nagel*, 109 N.Y. 482; *Bowes* v. *Shand*, L. R. [2 App. Cas.] 455.)
If the phrase " bought to be a March and / or April shipment "
refers to the seller, the time of shipment is none the less a
condition precedent. (*Shields* v. *Pettie*, 4 N. Y. 122; *Nel-
don* v. *Smith*, 36 N. J. L. 154; *Johnson* v. *McDonald*, 9 M.
& W. 600; *Smith* v. *Myers*, L. R. [5 Q. B. Div.] 429; L.
R. [7 Q. B. Div.] 139; *Russell* v. *Nicoll*, 3 Wend. 112;
*Croockewitt* v. *Fletcher*, 1 H. & N. 893; *Alewyn* v. *Pryor*,
R. & M. 406.)   The chartering of the *Wachusett* so that she
might reach the loading port in time to load the cargo in
March or April was a condition precedent. (*Corkling* v.
*Massey*, L. R. [8 C. P.] 395; *Behn* v. *Burness*, 3 B. & S.
757; *Lowber* v. *Bangs*, 2 Wall. 720; *E. S. & W. Co.* v.
*Littlejohn*, 164 N. Y. 187; *Smith* v. *Myers*, L. R. [5 Q. B.
Div.] 429.)

WERNER, J.   The contract which we are called upon to
construe presents a convincing illustration of the difficulty in
framing even a simple business contract in such plain language
that there can be no difference of opinion as to its meaning.
Whether this difficulty is due to the paucity or wealth of our
language, or to lack of care in its use, are questions which
might furnish interesting and instructive themes for academic
discussion, but would be of no practical value in the attempt
to decide which of the two constructions contended for by the
litigants before us is the one to be adopted.   However that
may be, we are confronted by the fact that two eminent
jurists have expressed opposing views upon this particular
contract in opinions which are characteristically able and
exhaustive and leave but scant opportunity for original analysis
or interpretation.   The learned referee, before whom the case
was tried, held with the plaintiffs, and the learned Appellate
Division has decided that the defendants' construction of the
contract is the true one.   We can best focus attention upon
the specific and narrow question involved by again quoting
that portion of the contract which contains the language to
be construed.

" Sold to Messrs. Knudson, Paterson & Co. for account of Messrs Hemenway & Browne.

" One-half of the cargo per Wachusett chartered to load not exceeding twenty-two hundred (2200) tons, usual good merchantable quality Nitrate of Soda, to arrive at New York, *bought to be a March and or April 1889* shipment from West Coast South America, *also bought to test* by South America assay not under 96% Nitrate nor over $1\frac{1}{4}$% Salt, if of inferior test, sellers to allow full coast allowance received." By way of premise to our conclusions we adopt, without qualification, the following initial postulates of the learned Appellate Division : (1) " In construing contracts of this kind the circumstances under which the contract was made, the manner of dealing in the business so far as it was known to both parties, and the purpose for which the contract was made are to be considered." (*Behn* v. *Burness,* 3 B. & S. 751, 757 ; *Lowber* v. *Bangs,* 2 Wall. 728.) (2) That in arriving at the construction of mercantile contracts it is to be remembered that merchants are not in the habit of putting into such contracts stipulations to which they do not attach some value and importance. (*Bowes* v. *Shand,* L. R. [2 App. Cases] 455, 463.) (3) That the words " to be a March and or April 1889 shipment," standing by themselves, would be considered as creating a warranty or condition precedent that shipment was to be made in those months. (*Norrington* v. *Wright,* 115 U. S. 188 ; *Hill* v. *Blake,* 97 N. Y. 216 ; *Bowes* v. *Shand,* L. R. [2 App. Cases] 455 ; *Ledon* v. *Havemeyer,* 121 N. Y. 179.) The facts of the case disclose that this contract was made in Boston between large dealers in nitrate of soda, both of whom knew that American contracts for the sale and purchase of that commodity were usually based upon executory South American contracts, the details of which as to quantity, place and time of shipment were important if not controlling factors in determining the provisions of the American contracts. The obvious purpose of this contract was, upon the one side to sell and upon the other to buy a cargo of nitrate of soda under these known conditions. As we have seen, the words " to be shipped in

March and or April" or "to be a March and or April ship-
ment" would amount to a warranty or condition precedent
that the goods should be shipped. Let us at this juncture
remember "that merchants are not in the habit of putting
into such contracts stipulations to which they do not attach
some importance," and then apply this rule to the case in
hand. What is the result? Simply that the word "bought,"
which precedes the words "to be a March and or April, 1889,
shipment," is worse than useless if defendants' construction of
the contract is to be accepted. Without the use of the word
"bought" we have a plain, specific and authoritative declara-
tion which, in any view of other portions of this contract, is
entirely consistent with the contention that there was a war-
ranty of shipment within the months named. Within the
rule referred to it is to be assumed, therefore, that the word
"bought" was not used in vain. It could not have been
employed to make plain that which was so much plainer with-
out it, and when we recall the circumstance that the contract
was made with reference to pre-existing executory contracts,
to which the vendor was a party, we must conclude that if
this word serves any useful purpose it was simply to identify
or characterize the thing sold as the same previously bought
by the vendor.

This view seems to be supported by the grammatical con-
struction of the contract. There was sold one-half of the
cargo of the Wachusett, chartered to load not exceeding 2,200
tons usual good merchantable quality nitrate of soda. The
cargo was "bought to be a March and or April, 1889, ship-
ment. * * *". Also "bought to test" * * * not
under 96% Nitrate nor over 1¼% Salt. What was chartered?
The ship of course. Chartered by whom? Concededly by
the sellers. Then to whom do the words "bought to be"
and "bought to test" refer? Obviously to the same parties.
The words "chartered" and "bought" are both participial
adjectives which describe the previous acts of the seller and
not the present purpose of the buyer. The word "chartered"
limits the word "Wachusett" and the word "bought" limits

the word " cargo." It seems to be conceded that the word " bought " is used in the same sense in both instances where it occurs. If, however, this question were regarded as open for discussion we think it could be effectually disposed of by the suggestion that the conjunction " also " so connects the two parts of the sentence in which the word is found as to leave no room for doubt. The expressions " bought to be " and " bought to test " should, therefore, be construed alike.

We quite agree with the learned Appellate Division that the only purpose of the agreement was to fix the rights of the parties. But the conclusion does not follow that it could not have been regarded as important to recite what the sellers had previously done. This was a " sold note." A simple statement of the quality and amount of nitrate sold, of the time and place of shipment and the vessel to be employed would have definitely and clearly fixed the rights of the parties if the statements as to time and quality were to be regarded as warranties. There is no apparent reason why the contract should have been incumbered with these meaningless expressions if the parties had in view nothing more than a statement of what the buyers had bought and when, from what place and in what vessel it was to be shipped to them. But a different situation is presented when we refer to the seller's position, the character of the thing sold and the circumstances under which the contract was made. The subject-matter of the contract was a cargo of nitrate, " bought to test," not less than 96% of nitrate and not more than $1\frac{1}{4}$% of salt. If the parties had intended that the buyers were to be bound by that test and no other, they could simply have recited that the plaintiffs had sold to the defendants goods of that description, and that would have ended it. But it did not end there. The buyers were to have the full coast allowance received by the sellers for any inferiority of quality, and here we obtain a clear view of the purpose of the words " bought to test." It was to show that the sellers had bought nitrate which was represented to them to be of the standard test, and they sold it as such to the buyers with the reser-

vation that if it proved inferior the buyers could receive the same rebate that was allowed to the sellers under their contracts. The same argument may be applied to the words "bought to be." If the contract had simply said "to be a March and or April, 1889, shipment," that would have fixed the status of the parties from the defendants' point of view. But the subject-matter of the contract was nitrate of soda which had not then been delivered to the sellers, and which was to be shipped in a vessel not then at the loading port. So much, at least, was known to both parties. Hence it is not unreasonable to suppose that the language of the contract was chosen with reference to the exigencies which might arise either in the delivery of the goods to the sellers, or in the sailing of the vessel at the appointed time. Viewed in that light, the contract is invested with a meaning which is consonant with the probable purpose of the parties, with the ordinary acceptation of the words used and with common sense.

It is urged, however, that there was clearly a warranty that the cargo should be shipped on the "Wachusett" and from the west coast of South America, and as the words of limitation refer quite as much to the ship and the place of shipment as to the time of shipment and the quality of the nitrate, the existence of a warranty in the one case must necessarily prove it in the other. This does not follow even if we assume, as we do not, that there was a warranty of ship and place. The place was a known quantity, with reference to which the words of limitation have no particular application. The thing sold was of a character and quality which, probably, could not have been duplicated at any other place, so that a warranty of place would not necessarily depend upon, or be connected with, a warranty as to other things. With regard to the vessel, a different question is presented. We agree with the learned referee that there was something more than a mere representation or agreement that a vessel was to be chartered to load not exceeding 2,200 tons, but also something less than a warranty or condition precedent upon which the validity of the contract depends.

When a contract of shipment names in positive terms the vessel and time of loading or sailing, it is a vital part of the contract, for failure of which the vendee may repudiate the contract because the thing offered is not the thing sold. (*Clark* v. *Fey*, 121 N. Y. 470; *Norrington* v. *Wright*, 115 U. S. 188; *Bowes* v. *Shand*, L. R. [2 App. Cas.] 455; *Behn* v. *Burness*, 3 Best & Smith, 751; *Corkling* v. *Massey*, L. R. [8 C. P.] 395.) Here the Wachusett was chartered when she was at a distant port. She was chartered to take a cargo which was "bought to be a March and or April, 1889, shipment." This was known to both parties, for the contract says so. The perils of the sea might destroy or retard the vessel, and the vicissitudes of the trade might prevent the delivery to the sellers of a sufficient quantity of nitrate to make a cargo at the appointed time. Thus, while it was undoubtedly the expectation of the parties that the Wachusett should carry the cargo, the language of the contract does not so peremptorily designate the Wachusett as the only vessel whose cargo would be accepted as to create a warranty. This view of the case receives some support in the language of the marginal note, "Should vessel named in this contract be lost before reaching loading ports another vessel or vessels to be substituted for same shipment or as near thereto as practicable." We have here a distinct recognition of the contingencies which might require the substitution of another vessel or vessels for the "Wachusett," and while the words "as near thereto as practicable" clearly refer to the time of shipment, it is equally apparent that neither the particular vessel nor the specified time was regarded as indispensable to the fulfillment of the contract. It is probably true, as suggested by the learned referee, that if the representations as to the ship were made by the plaintiffs with knowledge of the impossibility of getting her to the loading port in time to comply with the terms of the contract, the defendants having no such knowledge, the plaintiffs could have been held liable for the falsity of their representations had not the defendants waived their right to insist upon this defense by placing their

refusal to comply with the contract upon another and distinct ground. The only defense interposed by the defendants is based upon the alleged condition precedent that shipment was to be made in "March and or April." (*Littlejohn* v. *Shaw*, 159 N. Y. 188; *Smith* v. *Pettee*, 70 N. Y. 13; *Johnson* v. *Oppenheim*, 55 N. Y. 280; *Woolner* v. *Hill*, 93 N. Y. 576; *Cunningham* v. *Judson*, 100 N. Y. 179; *Knox* v. *Schoenthal*, 13 N. Y. Supp. 7; *Maskelinski* v. *Wazsinenski*, 20 N. Y. Supp. 533; *Bradley* v. *Cole*, 6 Hun, 660.)

It is urged for the defendants that if the stipulations of the contract relating to the time of shipment do not amount to a warranty or condition precedent, then it follows that the defendants would be required to accept the cargo no matter when it might be offered. The simple answer to this is that if there was no warranty or condition precedent, as to time, then the plaintiffs were required to deliver within a reasonable time. We think, upon the whole, that the referee's interpretation of the contract was right. The case is difficult, because the question is narrow; but that is because the parties to the contract have made it so. Instead of stating plainly and explicitly the terms thereof, they have chosen to rest it in language which, to say the least, is of doubtful import. In such a case no purely artificial or arbitrary rule of grammatical or legal construction of language can always be relied upon to work a just result. The court must get, as nearly as may be, into the atmosphere of the transaction, to learn what the parties intended from what other intelligent and fair business men would probably have done under similar conditions. When all these tests together point in one direction, as we think they do in this case, the court may properly apply the construction which they uphold, even though the question may not be wholly free from doubt. We have refrained from citing, or commenting upon, many of the authorities presented, *pro* and *con*, because they are inapplicable by reason of differences between the language of the contracts there construed and the contract here under consideration. The learned Appellate Division having reversed the judgment

entered upon the report of the learned referee solely upon the construction of the contract, we must take the facts as found in the trial forum. Upon the facts found the learned referee has decided that the course of the plaintiffs in storing the nitrate, advertising it for sale, and in the sale itself, was reasonable and proper, and with that finding we cannot interfere. It follows, therefore, that the order of the Appellate Division must be reversed and that the judgment entered upon the report of the referee must be affirmed, with costs to the plaintiffs in all courts.

PARKER, Ch. J., BARTLETT and MARTIN, JJ., concur; VANN and CULLEN, JJ., dissent; GRAY, J., absent.

Order reversed, etc.