WARNER-QUINLAN COMPANY, Plaintiff, *v.* ELIZABETH W. SMITH, Defendant.

Supreme Court, Tompkins County, August 22, 1929.

*Cobb & Cobb*, for the plaintiff.

*Stagg & Heath*, for the defendant.

SENN, J.  The plaintiff sues to compel the defendant to convey to it certain real property in the city of Ithaca, N. Y., pursuant to an instrument which contains both a lease of specified real property and an option to purchase it and other adjoining property.

The lease is dated March 18, 1922. It was executed by the defendant owner on that date and was acknowledged by the lessee, Consumers Service Stations Consolidated, on March 22, 1922. By its terms it leased premises at North Aurora and East Buffalo streets for a term of ten years commencing on March 31, 1922, and ending on March 31, 1932.

It also contained the following clause: " The party of the first part, also in consideration of the execution of this lease by the party of the second part does hereby give an option to the party of the second part to purchase the property described in this lease at any time within a period of five (5) years, together with the lands owned by the party of the first part at the date of the execution of this lease and adjacent to the premises herein described on both

the east and south  * * *  the purchase price under said option to be twenty-five thousand dollars."

The property leased as well as the additional land on which the option was given is described in the lease.

Through several assignments and transfers the lease and the option passed to the plaintiff who has all the rights of the original lessee. The lease is still in effect or at least was so at the time of the trial of this action.

On March 14, 1927, the Go-Gas Company, the then holder of the lease and option, gave written notice to the defendant, in the form of a letter dated March 12, 1927, that it had decided to exercise the option and purchase the property. On March 18, 1927, and all of that day the defendant through Dr. Richard C. Warren, her agent, was prepared to deliver a deed and search of the premises to the Go-Gas Company or the corporation which had succeeded to its rights on the payment of $25,000 in cash, but the cash was not tendered, the attorney for the purchaser claiming that he needed a reasonable time to examine the search and pass the title.

On March 31, 1927, an attorney for the then holder of the lease and option called at the office of Dr. Warren prepared to accept the deed and search and pay the purchase price, which was refused by Dr. Warren on the ground that the option had expired on March eighteenth of that month and the defendant still refuses to convey on the grounds stated.

The copy of the lease held by the defendant, and which was prepared by the lessee, provided for the payment of the purchase price contemporaneously with the delivery of the deed and abstract of title. No effective tender of the purchase price was made until March 31, 1927. The actual money was not tendered then but the necessary arrangements for its payment had been made and Dr. Warren's refusal to accept the money or deliver the deed was a waiver of an actual tender of the cash.

The question is whether the five-year period of the option began on March 18, 1922, the date of the lease or on the thirty-first when the term of the lease was to commence. The authorities are meager and I have found none directly in point.

The only case cited by the plaintiff is *Railway Advertising Co.* v. *Posner* (35 Misc. 285). The facts of that case were of a somewhat similar character but hardly parallel. Under a contract dated November 26, 1899, plaintiff was to place defendant's advertising cards in certain street cars "for a term of twelve months commencing Dec. 1, 1899." Defendant had a right to discontinue at the end of three months by giving thirty days' previous written notice. He gave an attempted notice on January 31, 1900. The

notice was one day too late on any theory, for thirty days prior to March 1, 1900, would have been January thirtieth. On the theory that the three months began to run on November 26, 1899, he would have been still more clearly too late, so that question was not before the court, and its dictum that the contract by its terms began to run on December 1, 1890, was obiter. But accepting it as a well-considered opinion, which on account of the eminence of the judges who rendered it I am impelled to do, it is hardly applicable to this case. There the option to cancel was essentially interwoven with the lease of advertising space. Posner was taking it on trial and might cancel if he found it unprofitable. The lease and the option were one.

It was held in *Mathews Slate Co.* v. *New Empire Slate Co.* (122 Fed. 972) that where the covenants of the lease and the option to purchase are independent, the option may be exercised, although grounds exist for a forfeiture of the lease, or even if the lease has been actually forfeited.

In the instant case the option constituted an entire contract independent of the lease, although its consideration was the signing of the lease. The option could have been exercised on March 18, 1922, by signing it on that day; in any event, it could have been exercised on the twenty-second when it was signed by the lessee or at any time prior to the thirty-first. As stated by the court in the *Mathews* case (*supra*): " The written instrument signed by the parties   *   *   *   is divided into two parts, each complete in itself and independent of the other. First, we have a complete and perfect lease of these premises, with mutual obligations and agreements; and, second, we have a complete option for the purchase of these premises."

The option could easily have been made to express its meaning as to duration. If it is to be considered as ambiguous, then we may consider what was the understanding or intent of the parties. The attitude of the defendant indicates that she and Dr. Warren thought it began to run on March eighteenth. The letter of March 12, 1927, written by the secretary of the Go-Gas Company to the defendant contains this sentence: " This option states that we have the privilege of purchasing the above-described property within five years from the date of lease   *   *   *." This does not necessarily reflect his understanding. It may have been written inadvertently or under a misapprehension and I do not attach too much importance to the words, but they may have a slight bearing on the question of what the lease was understood to mean.

The defendant has raised another question. The Consumers Service Station Consolidated was brought into being under a contract called a declaration of trust and existed as a business entity

calling itself a declaration of trust. It transacted business in the State of New York without having complied with section 15 of the General Corporation Law (added by Laws of 1927, chap. 425). If it is a corporation it is a stock corporation, because it could issue certificates of shares and pay dividends (Gen. Corp. Law, § 3, subd. 2), but I am not prepared to say that it is a corporation within the meaning of section 15. Because it prescribes a penalty the section cannot be construed to mean more than is expressly stated.

Section 16-g (added by Laws of 1927, chap. 425), cited by the defendant, does not apply because it was not in effect when the lease was made or while it was in the hands of the original lessee. All the succeeding holders have complied with section 15.

Disregarding all other questions raised by the defendant I hold that the option was effective on the day it was executed and not later than March 22, 1922. The plaintiff not having effectively tendered performance within five years of that date has forfeited its rights under the option and is not entitled to the relief demanded. I have signed findings accordingly.