Robert Doscher, J.
This is an action for a judgment directing the defendant to specifically perform an agreement to sell and convey certain real property located in the town of Mamaroneck, Westchester County. It is plaintiff’s position inter alia that it duly exercised an option granted to it, thereby ripening said option into a contract. Defendant, on the other hand, claims that the option was an integral and indivisible part of a lease between the parties and that, the lease being terminated before the exercise of the option because of the “ fire clause ” (to be discussed hereinafter) the option ceased and could not have ripened into a contract.
Briefly, the facts are as follows. After negotiations between the parties, a written contract was made on January 14, 1954, for the sale of the business then operated by defendant and his wife, a lease to the premises involved in this action, and an option to plaintiff herein to purchase the premises. After the contract was signed, and certain preliminaries not here material were fulfilled, the restaurant business was transferred and a lease between the parties to this-action was executed. On Sunday December 4, 1955, late at night, a fire of undetermined origin broke out and continued to burn into the morning of the following day. On December 7,1955, the plaintiff, in accordance with the terms of the option agreement, sent, by registered mail, written notice of his exercise of the option accompanied by the required deposit. After the notice of exercise of the option, but on the same day, defendant’s attorney advised by telephone, the plaintiff’s attorneys that the option could not be exercised because the lease and therefore the option, had terminated because of the fire.
The first question presented is whether the lease itself terminated because of the fire. The “ fire clause ”, referred to above, is part of a printed lease and reads, so far as here material, as follows: “ 5th. In case of damage, by fire or other action of the elements, to the building in which, the leased premises are located without the fault of the Tenant or of the Tenant’s agent or employees, if the damage is so extensive as to amount practically to the total destruction of the leased premises or the building, or if the Landlord shall within a reasonable time decide not to rebuild, this lease shall cease and come to an end, and the rent shall be apportioned to the time of the damage. * * * (Italics supplied) ”. It is defendant’s contention that this clause effects an immediate, per se termination of a lease *916 where a fire totally destroys, in contemplation of law, the leased premises or the building wherein the leased premises are located. Ño case directly on this question has been cited by counsel and the court has found none itself. However, the court feels that this construction, urged by defendant, is erroneous.
In the first place, the “ fire clause ”, by .its terms, is limited to a situation where fire damages the building in which the leased premises are located. It was obviously meant to cover a store, office, apartment or similar lease. In the case at bar, the leased premises are not located in a building. By the lease, itself, the leased premises covers buildings and land (apparently vacant). The clause would not be applicable.
Even if the clause were applicable to a situation such as here presented, the mere destruction by the elements of the building would not effect a termination. In order to find that an automatic termination takes place, the court would have to reject as meaningless the phrase “ or if the Landlord shall within a reasonable time decide not to rebuild”. Yet, in the construction of any clause in a lease “ the court is required to give some meaning to all the words used ” (R. I. Realty Co. v. Terrell, 254 N. Y. 121, 124). Meaning can only be given to the right of a landlord to decide whether to rebuild if the disjunctive “ or ” be read as a conjunctive “ and ”. Such conversion of the disjunctive into the conjunctive, or vice versa, is common where harmony between provisions of a legal document is necessarily required (30 Words and Phrases, Or, p. 39 et seq. and cases there cited).
The lease here involved should be construed to mean that in case of damage by fire so extensive as to amount to total destruction, the landlord has a reasonable time to decide whether to. rebuild, and if he decides not to rebuild (in the applicable situation), the lease will come to an end. It follows, therefore, .that until the landlord’s decision as to rebuilding is made, the lease, remains in full force and effect. Such construction does no harm to a tenant for, if the decision is made not to rebuild, the rent, is apportionable as of the time of damage — and not as of the time of decision.
In the case at bar there is clear proof that the exercise of the option, in accordance with its terms, by the plaintiff preceded the decision of the defendant not to rebuild,.if such decision was ever made. The attempted rejection of the exercise of the option was based solely on the extent of the fire damage. Nothing further appears in the record. On this basis (the extent of damage) alone, the rejection was of no force a.nd effect.
One further question has been raised and should be deter *917 mined. The defendant has strongly urged that since the option was contained in the lease, it was an integral and indivisible part thereof. On the other hand, plaintiff urges that, even if the lease ceased (although this court has determined that it did not), the option would continue in effect. This question must be determined only from the intent of the parties to the agreement of lease (People ex rel. New York Cent. & Hudson Riv. R. R. Co. v. Walsh, 211 N. Y. 90, 100; O’Neil Supply Co. v. Petroleum Heat & Power Co., 280 N. Y. 50, 55; Madawick Contr. Co. v. Travelers Ins. Co., 307 N. Y. 111, 119).
Before going further, it should be noted that the provisions here involved do not constitute a ‘ ‘ first privilege to purchase ’ ’ (R. I. Realty Co. v. Terrell, 254 N. Y. 121, supra) which is given to protect a lessee’s possession (Gilbert v. Van Kleeck, 284 App. Div. 611, appeal dismissed 308 N. Y. 882). Nor is this a case where the optionee desires to acquire an advantage as by way of a condemnation award for a sum greater than the option price, after an award was made (Reife v. Osmers, 252 N. Y. 320). Nor is it a case where an optionee claims an interest in realty, solely by virtue of the option (Matter of City of New York [Upper N. Y. Bay], 246 N. Y. 1). The equities did not lie with the optionee in any of those cases. On that score, as well as others, the case at bar is different.
In the case at bar, the clauses dealing with the option while physically incorporated in the lease, do not make the continuance of the lease a condition precedent to the exercise of the option. The condition precedent to the exercise of the option is that the tenant “ shall have observed, kept and performed all the covenants, conditions # * * on the part of the tenant to be kept ” (italics supplied). That the tenant kept his part of the bargain is undisputed.
It has previously been determined, on a motion for summary judgment, by one of my learned colleagues that “ whether the subject option was an integral part of the subject lease or whether said option constituted an independent right, separable from the lease ’ ’ constituted a question of fact to be determined on the trial (Bado Realty Co. v. Oetjen, N. Y. L. J., June 7, 1956, p. 15, col. 1). By this decision, this court is bound (Chase Nat. Bank of City of N. Y. v. Carver, 166 Misc. 708) and, hence, permitted the introduction of evidence tending to clarify the situation to arrive at the true intention of the parties.
The most significant piece of evidence as to the true intent of the parties is their original agreement of January 14, 1954. In that contract, separate paragraphs are used for (1) the sale of the restaurant business; (2) the lease, which was agreed upon *918 at the time of the signing of the contract not only as to the printed lease, but also as to certain specific clauses; and (3) the option. The provisions with respect to the option are all clearly spelled out. Furthermore, at one point in the aforesaid agreement, it was understood that the “ lease and the option herein (the agreement of January 14, 1954) contained ” were given in conjunction with the sale of the business. It is patent from the evidence of the facts surrounding the dealings of the parties that they considered the lease and the option separate deals. Only after the fire, and the results therefrom, did defendant claim that the lease and the option were indivisible. In so doing, he violated the original intent of the parties. The court holds that, even if the lease terminated (which it did not) before the option was exercised, the option continued and, upon plaintiff’s exercise thereof, ripened into a contract which can be ordered specifically performed.
It was agreed by counsel that, in the event this court decided that the defendant would be directed to specifically perform the contract arising out of the option, the case would be continued for further proof and argument on the question of an abatement of the purchase price. For that reason, the foregoing shall constitute a partial decision to which an appendix will be added.
Counsel shall arrange for a time, mutually convenient to them and the court, for a continuance of the case.