■ MICHAEL A. WELT ASSOCIATES, INC., Appellant, v BOARD OF EDUCATION, CENTRAL SCHOOL DISTRICT NO. 5, TOWNS OF HUNTINGTON AND BABYLON, Respondent.—In an action to compel defendant to permit plaintiff to enter upon its real property for the purpose of removing a certain structure (the first cause of action) and for money damages, plaintiff appeals from (1) an order of the Supreme Court, Nassau County, dated April 28, 1976, which denied its motion to dismiss the affirmative defense asserted in defendant's answer and (2) a further order of the same court, dated October 19, 1976, which denied its motion for summary judgment as to the first cause of action in its complaint and as to defendant's counterclaim. Orders affirmed, with one bill of $50 costs and disbursements to cover both appeals. The motion to strike the affirmative defense was properly denied (see *Rand v City of New York,* 47 AD2d 937). Special Term properly found that there are issues of fact which preclude the granting of partial summary judgment. Rabin, Acting P. J., Shapiro and O'Connor, JJ., concur; Titone, J., concurs insofar as the majority is affirming the order dated April 28, 1976 denying plaintiff's motion to dismiss the affirmative defense, but otherwise dissents and votes to reverse the order dated October 19, 1976 denying plaintiff's motion for summary judgment as to the first cause of action in its complaint and as to defendant's counterclaim, and to grant the said motion, with the following memorandum: Plaintiff instituted this action under a written lease, *inter alia,* to compel the defendant school district to permit the dismantling and removal of a prefabricated school building erected upon school property. Admitting the installation of the structure upon its property, and even the governing terms of the agreement, defendant interposed a counterclaim for specific performance of an alleged option to purchase the structure under the terms of plaintiff's bid dated June 7, 1972. However, while the bid submitted by plaintiff does clearly provide for an option as alleged by defendant, no provision of this nature survived the finalized agreement, dated June 26, 1972, which most clearly recites: "This is a contract of lease only and nothing herein contained shall be construed as conveying to the School District *any right, title or interest in or to* any buildings leased hereunder except as a lessee only. The buildings shall at all times during the term of this lease be and remain personal property, and *title thereto shall remain in the Lessor exclusively"* (emphasis supplied). Nonetheless, Special Term, divining issues of fact, denied plaintiff's motion stating: "A question has been presented as to the intention of the parties as to whether the option to purchase was to be considered as collateral and separate and distinct from the written lease or whether it was actually to be cancelled when it was not included within the written terms of the written lease *(Bado Realty Co. v. Oetjen,* 5 Misc. 2d 914, 917; *Warner-Quinlan Co. v. Smith,* 134 Misc. 649, aff'd. 229 AD 814, aff'd. 255 NY 582). Intention, as other factual issues, cannot be resolved summarily upon conflicting affidavits *(Morton L. Ackerman, Inc. v. Mohawk Cabinet Co., Inc.,* 37 AD2d 655, 656). Summary judgment may not be granted where the existence of a question of fact is in doubt or even arguable *(Terranova v. Emil,* 20 NY2d 493; *Falk v. Goodman,* 7 NY2d 87, 91)." This was error and the order dated October 19, 1976 should be reversed. The contract which emerged from the negotiations excludes from its purview the option which defendant now

asserts. While at an early stage of bargaining defendant sought that term and, apparently, plaintiff was willing to accede to it, the finalized contract which embodies their agreement purports only to be a lease, and expressly confers no option to purchase. It may be very unfortunate that defendant did not obtain this invaluable provision when it had the opportunity to do so, but it is not for the courts to intervene in this conflict to secure privileges which defendant failed to protect by the agreement. It is the peculiar "responsibility of the court to interpret written instruments * * * [in order] to determine '* * * the intention of the parties * * * from the language employed'" *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285, 291; *Bensons Plaza v Great Atlantic & Pacific Tea Co.,* 55 AD2d 266; *Mobil Oil Corp. v Frasier,* 55 AD2d 824). In the exercise of this power to ascertain the meaning of the written word, the authority of the court extends only so far as enforcing the contract according to its precise tenor, and not so far as redrafting the documents to suit or satiate the ambitious tastes of the parties (see *Laba v Carey,* 29 NY2d 302, 306; *Rodolitz v Neptune Paper Prods.,* 22 NY2d 383, 386; *First Nat. Stores v Yellowstone Shopping Center,* 21 NY2d 630; *Graf v Hope Bldg. Corp.,* 254 NY 1). Just as it can be rationally assumed that men of the world "are not in the habit of putting into such contracts stipulations to which they do not attach some value" (see *Browne v Paterson,* 165 NY 460, 466), and are not usually in the habit of reciting idle, useless statements, certainly it cannot be postulated, as the majority appears to do, that the omission of the purported option from the finalized agreement and the insertion, in its stead, of the language which circumscribed the rights of defendant and delimited them to one of a mere lessee without an ownership interest, was purely superfluous, without meaning or purpose. While I must admit that our courts have departed from the senseless, inexorable imposition of the so-called "plain meaning doctrine" (cf. *Wood v Duff-Gordon,* 222 NY 88, 91), it astounds the imagination to conceive of how an option can be magically derived from, or mystically divined into, an agreement which too clearly indicates the contrary. By finding that a question of fact exists, the court today allows defendant the opportunity to redraft the document in a manner obviously at war with its explicit delimiting provisions, to elevate a term which did not survive the negotiations to a role of central importance, and thus to permit defendant to expand and enlarge its substantive rights beyond the permissible bounds of the finalized agreement to the detriment of, and at the expense of, plaintiff's legitimate expectation (see *Rodolitz v Neptune Paper Prods., supra; Mobil Oil Corp. v Rubenfeld,* 77 Misc 2d 962 [dissenting opn of Margett, J., p 964], revd 48 AD2d 428, affd 40 NY2d 936; *Division of Triple T Serv. v Mobil Oil Corp.,* 60 Misc 2d 720, affd 34 AD2d 618; *Four Star Comics Corp. v Kable News Co.,* 289 F2d 632; *Rottkamp v Eger,* 74 Misc 2d 858). Enforcement of the contract according to its tenor is not a mere concession to that famed school of dour New England contract theoreticians, but is the firm bond upon which the stability of economic life inherently depends. The "Stability of contract obligations must not be undermined by judicial sympathy" *(Graf v Hope Bldg. Corp.,* 254 NY 1, 4, supra; cf. *Farmer's Loan & Trust Co. v Wilson,* 139 NY 284, 288). Accordingly, the order dated October 19, 1976 should be reversed and summary judgment granted to plaintiff on its first cause of action and on the counterclaim.