(161 App. Div. 148)

### SULLIVAN v. KNAUTH et al.

(Supreme Court, Appellate Division, First Department.   March 6, 1914.)

1. BANKS AND BANKING (§ 190*)—TRAVELER'S CHECKS—RELATION OF PARTIES.
   Where bankers issue traveler's checks agreeing to pay a specified sum through their correspondents on the countersigned signature of the person to whom the checks have been issued, corresponding to his signature originally written in another place on the checks, the relation between the holder and the issuing bankers is similar to that of a banker and depositor; and hence, where certain such checks, not countersigned, were lost or stolen, and the holder's signature was forged, the bankers, having paid the checks on the forged signature, were liable to refund to the owner, and were entitled to recover reimbursement against their immediate indorser, and each indorser in turn was entitled to recover against his prior indorser.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 733 · 735, 737; Dec. Dig. § 190.*]

2. BANKS AND BANKING (§ 190*)—TRAVELER'S CHECKS—FORGERY—"LOST."
   Where traveler's checks, after having been lost or stolen, were presented and paid under a forged countersignature of the owner, and in an action by him for reimbursement they were produced by the drawee. they were not "lost" within a provision of the agreement that the bankers would refund the amount of lost checks on the execution of a suitable bond of indemnity, so that the owner was not required to execute the bond as a condition to his right to recover.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 733–735, 737; Dec. Dig. § 190.*

   For other definitions, see Words and Phrases, vol. 5, pp. 4237, 4238.]

Appeal from Appellate Term, First Department.

Action by James Sullivan against Wilhelm Knauth and others.   A judgment for plaintiff was reversed by the Appellate Term (81 Misc. Rep. 148, 142 N. Y. Supp. 307), and plaintiff appeals by permission Reversed, and judgment of Municipal Court reinstated.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Harold G. Aron, of New York City (Mornay Williams and Stephen L. Vanderveer, both of New York City, on the brief), for appellant.

Briesen & Knauth, of New York City (George T. Hogg, of New York City, of counsel), for respondents.

CLARKE, J.   On September 5, 1911, the plaintiff purchased from the Lyon County Bank at Yerington, Nev., seven traveler's checks issued by the defendants, four $100 checks and three $50 checks, and thereupon signed all the said checks with his signature in the presence of the cashier of the said bank.   Thereafter he cashed $300 worth of the checks, $50 and $100 at Yerington, $50 at Reno, and $100 at San Francisco, and in each instance he obtained the proceeds of said check by presenting the same and signing his signature thereon at the place marked "Countersign here."   While on board the S/S San Juan en route to Ancon, Panama, from San Francisco, having in his possession said checks to the amount of $250 on the 15th of October, he discovered, when near Corinto, Nicaraugua, that the said checks were lost

or stolen. They had not been countersigned. He testified that after he discovered the loss he asked all the ships officers to inquire amongst the crew and put up a reward; that he was not allowed to go ashore at Corinto because the place was quarantined because of yellow fever. He testified that when he arrived at Panama:

"I gave notice to a man with their sign out in Panama; * * * gave notice to a man claiming to be their agent; I told him of the lost checks, and he asked me the numbers. I didn't know the numbers. I gave notice to the banks in Panama; to three banks at Panama, to stop payment on the checks. I gave notice to a man claiming to be their agent, with their sign on the front door, or a small bank and general store combined."

He also testified that he never authorized any one to sign those checks. He did not send any direct notice to New York; he was at Panama about the 21st or 28th of October; he went down to Peru and returned to the United States about the 21st of December, 1911. When he lost the checks he lost the numbers and the address of the defendants; that the first chance he had to give notice was at Panama.

The checks which had been paid by the defendants were produced upon the trial. They bore the words "James Sullivan" in the space marked "Countersign here." There is no contention that said purported signature of plaintiff is not a forgery. The defendant testified through their manager that the first date at which they heard of these lost traveler's checks was on January 3, 1912, and the notice came from the Lyon County Bank at Yerington about a month after the checks were all paid. They testified that they had no notice or knowledge that these checks were not presented by a holder in due course at the time they paid them, and that the defendants had no agent in Panama. The sample of check Exhibit 1 reads as follows:

K. N. & K. Traveler's Check. $100.
    New York [date]
Good within one year from date
    when countersigned below
    with the opposite signature

Sold by Lyon County Bank
    Yerington, Nevada.
    Holder's signature:
        *James Sullivan*

Knauth, Nachod & Kuhne, New York,

through their correspondent will pay against this check out of their balance to the order of *T. P. Bingham ó Hejos* one hundred dollars or equivalent as follows.

❖    *    *    *    *    *    ●    ❖    ●    ●

Countersign here:
    *James Sullivan.*
This signature must correspond with above.
                                    *Knauth, Nachod & Kuhne.*

This bears the indorsement:

Paguese á la orden do Cortes Commercial and Banking Co., Ltd. Valor recibide. T. P. Bingham ó Hejos.

Pay to the order of Amsinck & Co.

Value in account Managua Oct. 21, 1911.

Cortes Commercial Banking Co., Ltd., A. N. Menpedier, Agente en Necaragua.

Pay to the Bank of New York, U. S. A., or order. G. Amsinck & Co.

Received payment. The Bank of New York National Banking Association. Nov. 14, 1911. Charles Olney, Cashier.

Plaintiff testified:

"I asked for Wells Fargo traveler's checks, and he [referring to the offi
cer in the Yerington Bank] recommended them [referring to the checks of
defendant] to me, just handed me a red book. Did not give me any direc-
tions.　Q. What, if any, descriptive matter bearing the name of Knauth,
Nachod & Kuhne was shown to you in connection with these checks?　A.
Nothing; only when I was leaving, he gave me this red book, a book with
a red cover. European directory of that firm, I think."

Page 4 of the folder was admitted in evidence:

"If you have already traveled extensively, you probably know the difficulties
which, at times, arise in regard to arrangements for carrying money. Then,
you will appreciate the safety, economy, and convenience of our letter of
credit and traveler's checks. If this is your first long trip, we can assure
you that the various facilities which we offer will prove equal if not superior
to those provided by any other system."

The defendants offered in evidence the following from inside the
cover of book:

"Our traveler's checks are cashed by banks and bankers all over the world;
they are also accepted in settlement of accounts by the principal hotels and
numerous stores and in payment of tickets by steamship companies and many
railroads.

"We sell traveler's checks for a commission of one-half of one per cent.,
and guarantee payment of the face amount, less stamp tax, if any. * * *

"In order to insure himself against loss, the traveler is required at the
time of purchase to sign his name to the checks in the space reserved for
'holder's signature.' Our traveler's checks cannot be cashed unless they are
countersigned, and then only if 'holder's signature' and 'countersignature'
correspond. Wrongful holders would find it difficult to commit forgery as
the countersignature is to be affixed to the checks in the presence of our
correspondents. We refund the amount of lost checks against execution of
a suitable bond of indemnity. Particulars of such checks should, however,
be promptly reported."

Another excerpt offered by the defendant:

"We wish to call attention to the fact that the countersignature should be
affixed to the checks only in the presence of the person to whom they are
presented for payment. Checks already countersigned can only be cashed
with difficulty, and in case of loss they are open to misuse."

Plaintiff recovered judgment for the amount of said checks, $250.
On appeal the judgment was reversed by the Appellate Term, and the
complaint dismissed.　Plaintiff appeals.

The business of issuing and selling traveler's checks similar to those
issued by the defendants is of comparatively modern origin.　By rea-
son of their convenience the business has grown to be very consider-
able.　The exact relationship between the parties has not been settled
by judicial determination.　The case, by reason of the widespread in-
terests affected, is therefore of importance.

[1] The plaintiff procured these checks from the defendants' agents,
hence, from them.　In my opinion a relation cognate to that of de-
positor and banker should be considered to have been established be-
tween the plaintiff and these defendants.　If that is not the effect of
the transaction, the traveler obtains little advantage from these so-
called traveler's checks, and might as well carry bills or gold.　The
basis of his purchase is protection by reason of the double signature.

Safety is the thing impressed upon him. The paper is not effective as a draft, or check, or order for the payment of money, until the purchaser, who, in the presence of the agent of the defendant has signed his signature in the space "holder's signature," has countersigned it. The promise is to pay "when countersigned below with the *opposite signature,*" not the opposite name, and below "Countersign here" is engraved, "This *signature* must correspond with above," not this name, and in this booklet defendants call attention to the difficulty of successful forgery when the countersignature is made in the presence of the person who, as the agent of the defendant, pays the check. It seems to me, therefore, it must be held that it is the second signature which gives the paper final currency. It is in the precise situation of a check payable to the order of a designated payee unindorsed by said payee. That being so, the countersigned signature must be treated as the ordinary indorsement of a payee upon an ordinary check; that is, the bank is responsible if it pays on a forgery. Treating it in this way, those defendants have their remedy over against prior indorsers as in an ordinary case of forgery of payee's signature on any other negotiable instrument. Unless it be so held, the whole scheme seems likely to fail.

[2] The defendants make a point about "lost" check and their representation that they will pay the amount thereof on receiving a bond of indemnity. These checks are not lost. They are in existence. They were offered in evidence upon the trial. They were obtained from the possession of the defendants who had paid them. They are now in no sense of the word lost, and no bond of indemnity can be required. They are checks upon which the true owner's name, which gave them negotiability, that which would be equivalent to the payee's name, has been forged. The defendants received the plaintiff's money upon the agreement to pay it out on his order, evidenced by his countersignature upon this document. They breached their agreement by paying it out upon a forged simulation of his signature, and should be held, it seems to me, as they would have been under similar circumstances upon an ordinary check.

The only case on the subject called to our attention is Samberg v. American Express Co., 136 Mich. 639, 99 N. W. 879, where plaintiff sued as holder of an instrument delivered to him by one A. J. Townsend, whose signature appeared in the upper space, but who had drawn a line through the date and the countersignature. The court said:

"Checks of a like character to this one have come into very general use, especially by travelers. They are an ingenious, safe, and convenient method by which the traveler may supply himself with funds in almost all parts of the civilized world, without the hazard of carrying the money on his person. The company has the right to refuse to pay the check when the check does not bear the countersign agreed upon. The owner of the check also has the right to insist it shall not be paid when it is not countersigned as agreed. This check was not so countersigned, and for that reason defendant was entitled to a judgment in its favor."

The determination of the Appellate Term should be reversed, and the judgment of the Municipal Court reinstated, with costs to the appellant in this court and at the Appellate Term. All concur.