JAMES SULLIVAN, Respondent, *v.* WILHELM KNAUTH et al., Appellants.

Travelers' checks — provision that such checks will be paid only when holder's signature on checks and counter signature correspond — checks lost by payee paid by correspondent of bank issuing same to person forging payee's signature thereto — such payment a breach of contract and payee may recover value of checks so paid.

Defendants sold plaintiff travelers' checks. Books and a folder issued by them and delivered to plaintiff at the time of the purchase contained the following statements: "In order to insure himself against loss, the traveler is required at the time of purchase to sign his name to the checks in the space reserved for 'holder's signature.' Our Travelers' Checks cannot be cashed unless they are countersigned, and then only if holder's signature and countersignature correspond. * * * In case of loss the amount of checks will be refunded * * * upon execution of a satisfactory bond of indemnity. * * * Particulars of such checks should, however, be promptly reported." Plaintiff complied with this requirement as to his signature. He lost three checks which had not been countersigned by him and gave evidence on the trial tending to show diligence in giving notice of the loss. These checks were paid by the defendants on a forged signature, and went into their possession. They produced them on the trial and asserted they had been properly paid. *Held*, that when the defendants paid the checks, which were not countersigned by the plaintiff

but were, in fact, forgeries, it was a breach of contract, which entitled him to recover, and that defendants were not entitled to defend the action on the ground that plaintiff had failed to give a bond of indemnity.

*Sullivan* v. *Knauth,* 161 App. Div. 148, affirmed.

(Argued February 2, 1917; decided February 27, 1917.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 6, 1914, which reversed an order of the Appellate Term reversing a judgment of the Municipal Court of the city of New York in favor of plaintiff, and reinstated said judgment.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George T. Hogg* for appellants. The plaintiff is not within the defendants' promise to "pay against this check;" or within their promise to refund the amount of lost checks against the execution of a suitable bond of indemnity; or even within the erroneously assumed agreement to repay a deposit on his order, evidenced by his countersignature on the notes or checks in question. He has not presented and does not hold said instruments and they are not lost but held adversely and he disclaims the countersignatures thereon. The defendants are not in default and the plaintiff's remedy is a suit in equity against all parties to said instruments. (*Delaware Trust Co.* v. *Calm,* 195 N. Y. 221; *Vandegrift* v. *Cowles Engineering Co.,* 161 N. Y. 435; *Downes* v. *Phœnix Bank,* 6 Hill, 297; *Frank* v. *Wessels,* 64 N. Y. 155; *Crandall* v. *Schroeppel,* 1 Hun, 557; *Reade* v. *Marine Bank,* 136 N. Y. 454; *Cottle* v. *Marine Bank,* 166 N. Y. 53; *Embiricos* v. *A. A. Bank,* L. R. [K. B. 1905] 677; *Casper* v. *Kuhne,* 159 App. Div. 389.)

*Harold G. Aron, Mornay Williams* and *Stephen L. Vanderveer* for respondent. The breach of defendants' contracts to the plaintiff's damage in paying checks

which were not countersigned, and the defendants' express agreement that "any checks unused will be redeemed at their face value," make them liable for the amount claimed. (*Hartford* v. *Greenwich Bank*, 157 App. Div. 448; 2 Daniels on Neg. Inst. § 1611a; *Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y. 82; *Albany Bank* v. *People's Ice Co.*, 92 App. Div. 47, 52; *Cassidy* v. *Ullman*, 170 N. Y. 505; *Shipman* v. *Bank of State of N. Y.*, 126 N. Y. 318; *Frank* v. *Chemical Bank*, 84 N. Y. 209; *Critten* v. *Chemical Bank*, 171 N. Y. 219; *White* v. *Cont. Nat. Bank*, 64 N. Y. 316; *Bank of British N. A.* v. *Merchants Nat. Bank*, 91 N. Y. 106.)

HOGAN, J. The plaintiff, by occupation a miner, in the fall of 1911 contemplated a trip to San Francisco and Lima, Peru. He called at the Lyon County National Bank at Yerington, Nevada, and asked for Wells-Fargo travelers' checks. An officer of the bank recommended to him travelers' checks issued by defendants and he thereupon purchased seven checks, four for one hundred dollars each, three for fifty dollars each and paid therefor five hundred fifty dollars.

Three of the checks, two for one hundred dollars each and one for fifty dollars, are involved in the present action.

The following is a copy of one of the checks:

"K. N. & K. Traveler's Check Nos. S 4,021-01, $100.00.
          "Sold by Lyon County Bank,
"New York (Date)          Yerington, Nevada.

                              "Holders Signature.
"Good within one year from date ⎱
    when countersigned below ⎰     JAMES SULLIVAN.
    with the opposite signature.

"Knauth, Nachod & Kuhne, New York, through their correspondents will pay against this check out of their balance to the order of T. P. Bingham é Hijos one hundred dollars or equivalent as follows:

"In U. S. and Canada $100.00; England, Ireland, Scotland, £20-8-2; France, Belgium, Switz., Fcs., 512.50; Germany M. 416.60; Italy, Lir. 512.50; Sweden, Norway, Denm., Kronor 366.98; Holland, Florins 245.10; Austria, Kronen 490.20; Russia, Rubles 192.30; other countries at current rates.

"KNAUTH, NACHOD & KUHNE.

"Countersign here:

"JAMES SULLIVAN.

"This signature must correspond with above."

At the end:

"KNAUTH, NACHOD & KUHNE, NEW YORK.

"Checks negotiated in Europe, will be
paid only through European Correspondents."

(Then followed a list of such correspondents.)

"And all other correspondents as per official list."

The foregoing check was indorsed by T. P. Bingham è Hijos to the order of Cortes Commercial and Banking Co., Ltd., then by the latter to the order of G. Amsinck & Co., and by Amsinck & Co. to the Bank of New York, N. B. A. or order. Immediately following appears "Received payment Nov. 14, 1911. The Bank of New York National Banking Association, Charles Olney, Cashier."

The two remaining checks, one for one hundred dollars, one for fifty dollars, were in like form save that the payee in each check was Castellon & Lacayo, L'd'a., were each indorsed by the payee and others and were finally paid through the Bank of New York and indorsed by the latter in the same manner as the first check. Four of the seven checks purchased by plaintiff had been cashed by him. The three checks above referred to were produced by the defendants upon the trial.

At the time plaintiff purchased the seven checks at the bank in Yerington, he signed his name "James Sullivan" on each one of the checks under the words "Hold-

ers signature" engraved thereon, in the presence of an officer of the bank. The checks which he personally had cashed were countersigned by him where indicated by the words "Countersign here." The three remaining checks hereinbefore specifically referred to were not countersigned by him. His name appearing thereon was a forgery and such issue was not controverted by defendants upon the trial.

The evidence of plaintiff tended to show that he took passage on the steamship *San Juan* at San Francisco for Ancon, Panama. On October 15th, 1911, when near Corinto, Nicaragua, he discovered that the three checks which had not been countersigned by him had been lost or stolen while he was on the boat. He endeavored to find the checks and offered a reward for the return of the same. By reason of a quarantine at Corinto because of yellow fever he was not permitted to go ashore at that port. Upon his arrival at Panama he gave notice of the loss of the checks to a man who conducted a small bank and general store, upon which place of business was a sign inscribed "Knauth, Nachod & Kuhne," and was told by that man that he would stop payment of the checks. He also gave notice to three banks at Panama to stop payment of the checks. He testified that he did not know the numbers of the lost or stolen checks or the address of defendants, as the same was lost or stolen with the checks; that he did not send direct notice to New York, and the first opportunity afforded him to give any notice was upon his arrival at Panama.

From Panama plaintiff went to Peru, and later, and about December 21, 1911, returned upon a sailing vessel to the United States. Since his return he has resided at Portland, Oregon. December 29th, 1911, the Lyon County Bank at Yerington, Nevada, addressed a letter to defendants and inclosed therewith a letter received by it from the plaintiff. In the letter written by the bank appeared the following: (the letter inclosed) "is self

explanatory. We have written him to take the matter up with you. You will please stop payment on the checks as per his request  *  *  *." The receipt of that letter was acknowledged by defendants January 3, 1912.

On behalf of defendants evidence was offered to the effect that the letter received by them from the bank at Yerington was the first notice they had that the checks which had been paid about one month previous thereto were not presented by a holder in due course; that defendants did not have an agent at Panama, though they had some three thousand correspondents in their business of travelers' checks. Plaintiff having testified that at the time of the purchase of the checks a book with a red cover was delivered to him which he described as a "European directory of that firm I believe," upon cross-examination he testified "upon the cover of the book given me was printed 'We refund the amount of lost checks against execution of a suitable bond of indemnity. Particulars of such checks should, however, be promptly reported.'" Evidence offered by defendants tended to show that defendants issued two books, one a red covered book for foreign use, the second one a brown covered book for domestic use, also a folder. Counsel were permitted on the trial to read in evidence from the books and folder as follows:

"If you have already traveled extensively, you probably know the difficulties which, at times, arise in regard to arrangements for carrying money. Then, you will appreciate the safety, economy and convenience of our Letters of Credit and Travelers' checks. If this is your first long trip, we can assure you that the various facilities which we offer will prove equal if not superior to those provided by any other system."

"In case of loss, the amount of checks will be refunded, or a new supply furnished in their stead, upon execution of a satisfactory bond of indemnity. The numbers of the checks lost and the circumstances attending the loss

should, however, be at once communicated to Messrs. Knauth, Nachod & Kuhne, Leipzig, Germany, if lost abroad, or to Knauth, Nachod & Kuhne, New York, if lost in America, so as to enable them to do whatever is possible under the circumstances." .

" We sell Travelers' checks for a commission of one-half of one per cent, and guaranty payment of the face amount, less stamp tax, if any.  *  *  *"

"In order to insure himself against loss, the traveler is required at the time of purchase to sign his name to the checks in the space reserved for 'holder's signature.' Our Travelers' Checks cannot be cashed unless they are countersigned, and then only if ' holder's signature ' and ' countersignature ' correspond.  Wrongful holders would find it difficult to commit forgery as the countersignature is to be affixed to the checks in the presence of our correspondents."

" We wish to call attention to the fact that the countersignature should be affixed to the checks only in the presence of the person to whom they are presented for payment.  Checks already countersigned can only be cashed with difficulty and, in case of loss, they are open to misuse."

The Lyon County National Bank had in its possession engraved checks signed by the defendants.  The amount payable on each check was engraved thereon.  The bank was authorized to fill in the date on the checks, write or stamp thereon the name of the bank as the seller thereof, to receive the cash therefor, and after the purchaser had signed his name to each check in the presence of an officer of the bank in the space upon the checks reserved for "holders signature" to deliver the checks.  The defendants had delivered to the bank literature issued by them from which quotations have been made to be distributed to purchasers of checks.  The Yerington bank in the transaction at bar followed the procedure dictated by defendants, presumably the same course adopted with

their numerous correspondents and at their home office in the city of New York. Clearly the Lyon County National Bank at Yerington, Nevada, was the agent of defendants. As such agent it received from the plaintiff five hundred fifty dollars for defendants, not as a deposit or for safekeeping, but upon a contract wherein defendants undertook that they would within one year from the date of the checks, when countersigned below (where the words "countersign here" appeared) with the opposite signature (*i. e.*, the original signature of plaintiff subscribed in the presence of defendant's agent under the heading "holders signature") pay the amount stated in the check to the order of the payee therein named. The contract of defendants was prepared by them. In their literature they referred to the safety, economy and convenience of their travelers' checks; that they sold such checks for a commission of one-half of one per cent and guaranteed payment of the face amount of same; they required the purchaser to place his signature in the space reserved for that purpose. Upon the face of the check they provided a means of protection to themselves and their correspondents, for thereupon was the holder's handwriting for comparison with the countersignature which was to be affixed in the presence of the person to whom the check was presented for payment. While the requirement of a countersignature on the check was some protection to the purchaser of the same, it was of primary protection to defendants, as their promise to pay arose when the check was countersigned "below with the opposite (genuine) signature, which must correspond with the above signature," not the above name. The checks countersigned by the plaintiff in his handwriting before he left San Francisco were paid by defendants. They had his genuine countersignature in their possession for some time before the checks in question were paid, consequently they had additional means of identification of signatures. They paid the three checks in question upon a forged

simulation of plaintiff's signature, rather than when the checks were countersigned with the "opposite signature" — the genuine signature of the purchaser inscribed on the same, and thereupon breached their agreement.

Defendants were not entitled to defend the action on the ground that plaintiff had failed to give them a bond of indemnity. The checks are not lost, they are in the possession of defendants, and were produced by them upon the trial of the action. While defendants asserted that the checks had been paid, they did not undertake to question the evidence offered by plaintiff that his name appearing thereon as a countersignature was a forgery. After full consideration of all propositions argued by counsel for appellants we conclude that the order of the Appellate Division was right and should be affirmed, with costs.

McLaughlin, J. (concurring). I concur in the conclusion reached by Judge Hogan on the ground that when the defendants paid the checks here in question, without the same having been countersigned by the plaintiff, it was a breach of contract which entitled him to recover the amount thus paid. The defendants expressly agreed that they would not cash such checks unless they were thus countersigned. They never were countersigned by the plaintiff, and when the defendants paid them the plaintiff had an immediate cause of action to recover the damages sustained, which were the amount of the checks, together with interest from the time the demand was made by him upon the defendants for payment. (*Samberg v. American Express Co.*, 136 Mich. 639.)

Hiscock, Ch. J., Collin, Cardozo, Pound and Crane, JJ., concur with both Hogan and McLaughlin, JJ.

Order affirmed.