## HARRY VENABLE v. AMERICAN EXPRESS COMPANY AND RAILWAY EXPRESS AGENCY, INC.

(Filed 8 May, 1940.)

**1. Bills and Notes § 6—**

A travelers' cheque not signed or countersigned by the purchaser or holder is not a negotiable instrument, since it is not an unconditional promise to pay to the order of a specified person or bearer, the promise to pay being conditioned upon the cheque being countersigned with the signature appearing at the top of the cheque. C. S., 2982.

**2. Bills and Notes § 9f—Purchaser of blank travelers' cheque may not recover thereon free from equities.**

The evidence tended to show that plaintiff in good faith accepted travelers' cheques in payment for services rendered, which cheques were undated and were not signed or countersigned by the purchaser or holder,

that the cheques were some of the cheques which defendant had sent to a bank for sale, and that the bank had become insolvent and closed its doors and had never accounted to defendant for the blank travelers' cheques in its possession. *Held:* Even conceding that plaintiff purchased the cheques in good faith and for value, plaintiff is not entitled to recover thereon, since the blank cheques are not negotiable instruments, and defendant's motion to nonsuit was properly granted.

APPEAL by plaintiff from *Johnston, Special Judge,* at September Term, 1939, of MECKLENBURG. Affirmed.

From judgment of nonsuit rendered at the close of the evidence, the plaintiff appealed.

*Hiram P. Whitacre and B. Irvin Boyle for plaintiff, appellant.*
*Cansler & Cansler for defendant, appellee.*

DEVIN, J. This appeal presents the question of the liability of the defendant American Express Company upon certain travelers' cheques issued by it, which came into the possession of the plaintiff and were presented for payment without signature or countersignature of the purchaser.

The pertinent facts, as shown by the evidence adduced in the trial below, may be stated as follows: The defendant American Express Company, prior to December, 1926, sent to the Charlotte Bank & Trust Company for sale to its customers numbers of printed travelers' cheques bearing only the signature of defendant's treasurer. These cheques, all of like tenor, conformed to the following exhibit:

"U. S. Dollar Travelers Cheque                      — D. 788,170 —
  When Countersigned below with               Before Cashing write
  this signature                                             here City and Date.
................................. ...............................      ......................................19........

AMERICAN EXPRESS COMPANY
At Its Paying Agencies

Pay this cheque from our
Balance to the Order of.................................... ............... . ................$100.00.
                                                                    :In All Other Countries
  In United States                                     :—At Current Buying Rate—
One Hundred Dollars                             :For Bankers' Cheque on
                                                                    :New York.

Countersign Here in
Presence of Person Cashing.
.......................................... ................. ......     (Signed)  Jas. F. Fargo, Treasurer
    This cheque is redeemable only at the company's offices and bankers in the United States."

These cheques when sent to the Charlotte Bank were enclosed in covers on which were printed instructions for the seller, requiring, among other things, that the purchaser's application be filled out for every sale of travelers' cheques and signed showing the address of the purchaser, also that "purchasers must immediately sign their names in the space provided in the upper portion of the cheques only, leaving blank all other spaces, including that for countersignature provided in the lower part, until cheques are presented for payment."

In December, 1926, the Charlotte Bank & Trust Company closed its doors on account of insolvency and a receiver was appointed. Travelers' cheques, in indicated amounts of more than four thousand dollars, which had been sent to the Charlotte Bank, were never returned to the Express Company or in any way accounted for.

On 25 June, 1938, the plaintiff Venable presented to the defendant certain of these travelers' cheques, the numbers thereon corresponding with those which had been originally sent the Charlotte bank, and demanded payment. These aggregated $1,800 in indicated value, and were contained in four books of ten cheques each enclosed in covers with the above quoted printed instructions thereon. All of these cheques were undated, and were without signature or countersignature of purchaser or holder. Payment was refused.

The plaintiff testified that these cheques were given him by one John Waldruff in payment for personal services rendered Waldruff extending over a period of several years. It appeared that Waldruff, a painter and paper hanger, had suffered a stroke of paralysis, and finally died in the County Home, 22 June, 1938. The cheques were delivered to plaintiff by Waldruff shortly before he died. Plaintiff was shown to be a man of good character.

The plaintiff sought recovery on these cheques on the ground that the cheques were intended by the defendant to take the place of currency, to pass as money, and to provide an international exchange; that these printed instruments, while *sui generis,* possessed certain characteristics of bills of exchange, and that according to the negotiable instruments statutes the plaintiff was a holder for value, that he took the cheques in good faith and for value, without notice of any infirmity, and was therefore *prima facie* a holder in due course, unaffected by the failure of the bank to account to the Express Company. Plaintiff contended that it was not essential to the negotiability of the instruments that they be signed or countersigned by the purchaser.

In support of these contentions plaintiff cited the recent case of *American Express Co. v. Anadarko Bank & Trust Co.,* 179 Okla., 606. In that case travelers' cheques, in the same form as here, were stolen from a bank to which they had been sent for sale by the American

Express Company. At the time of the robbery the cheques were unsold and unsigned. When presented for payment, subsequently, in another state, a name was signed in the upper space on the cheque and countersigned by like signature in the lower space. It was held that the Express Company was liable to the *bona fide* purchaser and holder.

It is apparent that the facts in the instant case differ from those upon which the decision in the Oklahoma case was based. Here the cheques came to the plaintiff in their original form, undated, unsigned, uncountersigned, still covered by enclosures showing the printed instructions of the Express Company.

The legal effect of the possession of travelers' cheques, which did not bear the signature or countersignature of the purchaser, has been considered by courts in Texas, Michigan and New York. *City National Bank of Galveston, Texas, v. American Express Co.,* 16 S. W. (2d), 278; *Same case,* 7 S. W. (2d), 886; *Samberg v. Am. Express Co.,* 136 Mich., 639, 99 N. W., 879; and *Sullivan v. Knauth,* 220 N. Y., 216. In the last case the cheques, which had been sold to the plaintiff and which bore his signature in the upper space, were lost or stolen. They were subsequently paid by the defendant to other than the purchaser, upon a forged countersignature. Holding the defendant liable to the plaintiff, the original purchaser, the Court said: "While the requirement of a countersignature on the check was some protection to the purchaser of the same, it was a primary protection to the defendants, as their promise to pay arose when its check was countersigned 'below with the opposite (genuine) signature which must conform with the above signature.'"

In the Texas case blank cheques had been stolen from a bank in another state. When cashed the blank spaces had been filled in. The Express Company was prevented from showing that at the time they were stolen from the bank the spaces were unfilled. In reversing the trial court it was held that this testimony, if believed, would have established a complete defense for the Express Company.

In the Michigan case, considering a traveler's cheque, the Court used this language: "The Company has the right to refuse to pay when the check does not bear the countersign agreed upon."

In Ogden Negotiable Instruments (4th Ed.), at page 480, the author states the principle as follows: "A traveler's check is a negotiable instrument upon which the holder's signature must appear twice in order to be a complete instrument. It is issued by a bank to a holder who must place his signature upon the instrument at the time it is issued, and the instrument must be countersigned by the holder before it is paid. Checks of this character have come into very general use, especially by travelers. They are an ingenious, safe and convenient method by which the traveler may supply himself with funds in almost all parts of the civilized world

without the hazard of carrying the money on his person. The bank or company issuing the instrument has the right to refuse to pay it when it does not bear the countersign agreed upon."

An examination of the wording on the checks presented by the plaintiff for payment in this case leads to the conclusion that these instruments, without signature of purchaser, name of payee, or countersignature, do not come within the definition of negotiable instruments (C. S., 2982), in that they are not unconditional promises to pay, nor are they payable to the order of a specified person or to bearer, and hence are incomplete. *Johnson v. Lassiter,* 155 N. C., 47, 71 S. E., 23; *Hunt v. Eure,* 188 N. C., 716, 125 S. E., 484. For the protection of the purchaser as well as for the protection of the Express Company, it is made to appear that "when countersigned below with this signature," that is, with the same signature as that appearing in the upper space, the check will be paid.

We conclude that the court below has correctly ruled that the evidence offered is insufficient to make out a case of liability on the part of defendant for the cheques sued on, and that the judgment of nonsuit must be

Affirmed.