**EMERSON v. AMERICAN EXP. CO.**

**No. 1218.**

Municipal Court of Appeals for the District of Columbia

Argued June 9, 1952.

Decided July 17, 1952.

[1]. Code 1940, § 43–1521.

E. Paul Yaselli, New York City, with whom Walter Armstrong, Washington, D. C., was on the brief, for appellant.

C. Frank Reifsnyder, Washington, D. C., with whom Howard Boyd, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

In Naples, Italy in November, 1946, Claude L. Emerson purchased from American Express Co., S. A. I., correspondent of American Express Company (appellee in this case) fifty-one travelers' checks having a total face value of $5010. As is usual in such transactions, he signed an application for the purchase of the checks and, at the company's office at the time of purchase, signed each check in the upper left-hand

corner. Immediately thereafter, and contrary to his written agreement to countersign the checks "only at time of encashment and in the presence of the payer," he proceeded to countersign in the lower left-hand space thirty of the checks, of the value of $3000. Within a very few hours these thirty checks were lost, or stolen from him. He gave verbal and written notice of the loss to the Express Company but when the checks were ultimately presented for payment that company redeemed them. Appellant sued for the amount of the checks and after a trial by the court, finding and judgment were entered for defendant. That judgment is now here for review.[1]

The trial judge made written findings of fact substantially as we have just recited them. He also made conclusions of law in which he ruled among other things that by countersigning the thirty checks as he did, plaintiff had breached his contract; that plaintiff's failure to insert the name of the payee in the space provided did not render the checks incomplete or prevent their negotiation by holders in due course; that plaintiff had no right of countermand; and that the Express Company was legally obligated to honor the checks when presented by holders in due course.

*Appellant's Rights under Contract Law.*

■ Appellant takes the position that the law of negotiable instruments does not govern this situation and that the case must be decided on principles of contract law. If that be so we think it plain that he cannot prevail. The contract between the parties obviously consisted of the application signed by the appellant and the exchange of his money for travelers checks. In signing the application appellant, who is a lawyer, expressly agreed that he would countersign each check only in the presence of the "payer" to whom he was negotiating it. He also agreed that if he should "default or fail to observe any of the foregoing obligations; any and all risk, loss and expense shall be for the account of the

undersigned and the American Express Company and its agents shall not be liable or accountable therefor in any respect." Nevertheless he proceeded at once to countersign the thirty checks in question and in that state they were lost by or stolen from him in a very few hours. Thus we have an express contract and a clear breach thereof by appellant. It requires neither argument nor citation to demonstrate that such breach stood in the way of his recovery under principles of contract law.

■ But he builds an argument to the effect that the Express Company was derelict in its duty after he notified them of the loss of the checks. He says they should have circularized their agencies with notices to withhold payment of the lost or stolen checks. But in view of the fact that the checks were admittedly countersigned and in view of what we shall say later it seems rather plain that such circularization would not have had any practical effect, for it is well-known that travelers checks are cashable all over the world. The Express Company could hardly have been expected to reach and cover every possible bank, steamship, hotel and other business establishment to forestall negotiation of the checks.

Appellant also says that his making of an application for refund on the company's application blank "involved a corresponding legal duty on defendant to pay that claim." We think that argument answers itself. There is nothing in the contract and no legal principle here applicable which would make the refund automatically grantable.

■ Another ground on which appellant seeks to charge the Express Company with liability is based on the words of the application which provide that if he fails to observe any of his obligations (including of course the obligation not to countersign in advance), "any and all risk, loss and expense shall be for the account of the undersigned and the American Express Company and its agents shall not be liable or accountable therefor in any respect." Ap-

1. The case was here before on review of summary judgment, Emerson v. American Express Co., D.C.Mun.App., 78 A.2d 862.

In the opinion we rendered we did not reach the merits and nothing we said there is decisive of the present appeal.

pellant would have us read this to mean that because the Express Company had the *right* to charge him with the expense of investigating the loss or theft such right implied a *duty* to make such an investigation and that its failure to do so amounted to a breach of contract. This we think would be a highly strained construction for it would be converting a permissive or discretionary right into a mandatory duty. We must hold that no liability can be based on such ground.

■ Next, appellant argues that a fiduciary relation existed between him and the Express Company and that on principles of equity he was entitled to recover. We find it difficult to follow this argument. No facts were presented in the trial court to show that any special relationship of trust and confidence was involved in the initial transaction—the purchase of the checks. As was said by Rugg, C. J., in Paulink v. American Express Co., 265 Mass. 182, 163 N.E. 740, 741, 62 A.L.R. 506: "No fiduciary relation existed between the parties. The defendant did not receive the money of the plaintiff in any trust capacity. The transaction was purely contractual in its nature. It related to the subject of negotiable instruments, which is governed by statutes and general commercial usages and had no connection with the subject of trusts." Nor were any facts presented which would seem to have required the Express Company after notice of the loss or theft of the already-countersigned checks to do other than it did. We have already commented on the probable futility of such action. Appellant says the Express Company should have surrendered the checks to him after they had been redeemed but he presented no evidence in the trial court to show that he had suffered by the failure to receive the checks. We conclude that plaintiff did not make out a case for recovery under contract law.

*Applicability of Negotiable Instruments Law.*

■ We think the rights of the parties are to be determined under the law of negotiable instruments, for such these checks undoubtedly were. Each of them was in the following form:

U. S. Dollar Travelers Cheque
When countersigned below with this signature

........................ Before cashing. write city, and date 19...

AMERICAN EXPRESS COMPANY
at its paying agencies

Pay this Cheque from our
Balance to the Order of ...............................................$100.00

In United States
One Hundred Dollars

In All Other Countries
At current buying rate
for Bankers' Cheques on New York

Countersign here in presence of person cashing

..............................    ..............................
                                                Treasurer.

This cheque is redeemable only at the company's offices and bankers in United States

We have not been cited to any reported case involving this exact situation (where travelers checks have been lost or stolen after being countersigned) nor has our own search disclosed any. We turn first to a consideration of how instruments of this kind may be defined or classified. Williston states that such checks are a development from letters of credit and serve the dual

purpose of a letter of credit and a draft on the issuing agency. Williston, Negotiable Instruments, 287–293 (1933). In Ogden, Negotiable Instruments, § 254 (3d ed. 1931), such checks are referred to as negotiable instruments. In 7 Am.Jur. 909, we find the statement that such checks are foreign bills of exchange and are negotiable instruments, citing Paulink v. American Express Co., 265 Mass. 182, 163 N.E. 740, 62 A.L.R. 506.

In a comparatively recent Federal case the function and status of these checks were well-stated thus: "The essential value and purpose of a traveler's cheque is that it is a cashier's cheque payable by a bank or other corporation of unquestioned financial standing and integrity which is placed by the issuing bank in the hands of agent banks for delivery to any person who will pay the face value plus a small premium. It is payable to such individuals without identification and merely upon corresponding signatures. They are freely accepted not only by banks but in remote rural communities. That they are cheques which are intended to be and are freely negotiable cannot be gainsaid. Refusal of payment by the issuing bank or trust company because of defenses ordinarily available would be practically destructive of the entire business of placing such cheques in circulation. The special attributes and functions of these cheques have long been recognized." Peoples Sav. Bank v. American Surety Co., D.C., W.D.Mich.1936, 15 F.Supp. 911, 913. The United States Circuit Court of Appeals for the 8th Circuit held that such instruments are essentially cashier's checks in the nature of bills of exchange drawn by the issuing bank on itself and accepted by the act of issuance: Mellon Nat. Bank v. Citizens Bank & Trust Co., 8 Cir., 1937, 88

F.2d 128; certiorari denied, 302 U.S. 702, 58 S.Ct. 21, 82 L.Ed. 542. This ruling was repeated in another Federal case five years later and the court reiterated that " 'It is a bill of exchange drawn by the issuing bank upon itself and is accepted by the act of issuance, and the right of countermand as applied to ordinary cheques does not exist as to it.' " Pines v. United States, 8 Cir., 123 F.2d 825, 828.

█ █ Since the Express Company defended on the ground that it had redeemed the checks in the hands of holders in due course we must consider the status of the checks when they left appellant's possession. At the risk of seeming to oversimplify the matter we think it is correct to say that appellant by adding his countersignature to the checks made them fully negotiable within the meaning of §§ 1 and 9 of the Uniform Negotiable Instruments Law,[2] and that in the absence of a showing of fraud or deceit on the part of the Express Company it was bound to honor them when presented by a holder in due course. Transcontinental & W. Air v. Bank of America, Etc., 46 Cal.App.2d 708, 116 P. 2d 791; Farmer's State Bank of Dickinson v. Koffler, 60 N.D. 11, 232 N.W. 307, 70 A.L.R. 1223; Gruntal v. United States Fidelity & Guaranty Co., 254 N.Y. 468, 173 N.E. 682, 73 A.L.R. 1337; 37 McKinney's Consolidated Laws of New York Annotated, c. 38, Negotiable Instruments Law, § 96; D.C.Code 1940, § 28–407; Uniform Negotiable Instruments Law, § 57. And appellant's attempt to countermand the checks after they were already in circulation was ineffectual as to holders in due course. Pines v. United States, supra.

In New York[3] it has been held that the original purchaser of a travelers check was the payee and that his countersignature

2. 37 McKinney's Consolidated Laws of New York Annotated, c. 38, Negotiable Instruments Law, §§ 20 and 28; D.C. Code, 1940, §§ 28–102, 28–109. See also Uniform Negotiable Instruments Law, § 10; 37 McKinney's Consolidated Laws of New York Annotated, c. 38, Negotiable Instruments Law, § 29; D.C.Code, 1940, § 28–111, which provide: "The instrument need not follow the language herein employed, but any terms are sufficient

which clearly indicate an intention to conform to the requirements hereof."

3. Since the checks were redeemable at the company's offices which were in New York the laws of that state would seem to govern. Croissant v. Empire State Realty Co., 29 App.D.C. 538. It should be noted that the Uniform Negotiable Instruments Law has been enacted in this jurisdiction as well as in New York.

would constitute an endorsement in blank. Sullivan v. Knauth, 161 App.Div. 148, 146 N.Y.S. 583, affirmed 220 N.Y. 216, 115 N.E. 460, L.R.A.1917F, 554, in an opinion which did not decide this particular point.[4]

Perhaps it may be questioned (though appellant has not done so) whether the checks were complete and regular on their face because no name was inserted in the "Pay to the Order of" blank.[5] This question has been answered in Sullivan v. Knauth, supra. It has also been answered in City National Bank of Galveston v. American Express Co., Tex.Com.App., 16 S.W.2d 278, affirming American Express Co. v. City National Bank, Tex.Civ.App., 7 S.W.2d 886. There the court said that the fact that the date and name were left blank did not prevent the purchaser from becoming a holder in due course, since from the unique nature of travelers checks such unfilled blank spaces do not render them incomplete under the Negotiable Instruments Act. As we have already indicated, the act of countersigning made them in effect bearer instruments. An Oklahoma case, American Express Co. v. Anadarko Bank & Trust Co., 179 Okl. 606, 67 P.2d 55, 57, 110 A.L.R. 972, goes still further and holds that the countersignature in the lower left-hand corner of a travelers check "shall constitute the countersign whereby all doubts are dispelled and any payee of said instrument is assured that he can accept the same with the same freedom that he would the tender of actual money or currency."[6]

We conclude that whatever may be its effect in the case of ordinary bank checks the lack of a named payee in the body of a travelers check does not render the instrument incomplete as to a subsequent holder for value. On the contrary we think that the very nature of a travelers check is such that, having been signed and countersigned by the purchaser, it may be regarded as having been endorsed in blank and rendered subject to negotiation by delivery; and that a party cashing such a check containing identical signature and countersignature is entitled to collect from the issuer. Peoples Sav. Bank v. American Surety Co., D.C.W.D.Mich., 15 F.Supp. 911.

It follows from what we have said that the Express Company was bound to honor the checks when presented for payment, that such payment in the regular course of business discharged the instruments and extinguished any claim of appellant thereunder.[7] In addition to the cases already cited we think the following authorities generally support the views we have expressed. Poess v. N. Y. Twelfth Ward Bank, 43 Misc. 45, 86 N.Y.S. 857; Hibbs v. Brown, 190 N.Y. 167, 82 N.E. 1108; Greeser v. Sugarman, 37 Misc. 799, 76 N.Y.S. 922; Venable v. American Express Co., 217 N.C. 548, 8 S.E.2d 804; Samberg v. American Express Co., 136 Mich. 639, 99 N.W. 879; 7 C.J. 702; 9 C.J.S., Banks and Banking, § 344.

Affirmed.

4. Even if we were disinclined to agree with the views expressed in the case cited it is still the only expression on the subject by a New York court and should therefore be applied to this situation.

5. See 37 McKinney's Consolidated Laws of New York Annotated, c. 38, Negotiable Instruments Law, § 91; D.C.Code 1940, § 28–402; Uniform Negotiable Instruments Law § 52.

6. The court also ruled that a subsequent holder of such checks has the same rights as one who comes into possession of stolen money bona fide and for a valuable consideration, and that his title is superior to that of the true owner. Citing Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237. For a discussion of this case, see 47 Yale L.J. 470.

7. See 37 McKinney's Consolidated Laws of New York Annotated c. 38, Negotiable Instruments Law, §§ 90 and 96; D.C. Code 1940, §§ 28–401 and 28–407; Uniform Negotiable Instruments Law §§ 51 and 57.