IsiDOK Wassebvogel,
Spec. Bef. Plaintiff seeks to recover from defendant the sum of $7,560, which represents the face amount of certain travelers’ checks entrusted to defendant for sale to its customers.
Plaintiff (hereinafter referred to as “ City Bank”) caused to be delivered to defendant approximately $8,000 worth of blank travelers’ checks, to be sold by defendant in the course of its regular business. Upon receipt of these blank checks, defendant was required by City Bank to sign so-called “ Trust Beceipts ” which contained the following provision: “ (d) pending due issuance or return to and receipt by the Bank of such Checks, the undersigned assumes full responsibility to the Bank for their safekeeping and in the event of loss, theft or destruction of all or any of the checks prior to their issuance the undersigned will notify the Bank promptly thereof in writing and will upon request provide the Bank with a bond in twice the amount of the Checks so lost, stolen or destroyed ”.
The travelers’ checks here involved were presented for payment to City Bank by several out-of-town banks and, upon such presentation, were paid the amount which City Bank seeks to recover here. By way of affirmative defense, however, defendant asserts that these checks were stolen from its offices during the night of June 27, 1957, and that immediately upon the discovery of the theft the following morning, City Bank was given notice of the loss pursuant to the foregoing provision of the “ Trust Beceipts.” It is defendant’s contention that the monetary loss to City Bank was caused solely by the fact that City Bank voluntarily chose to pay out sums of money upon the presentation of such checks at a time when it actually knew, or should have known, that these checks had been stolen in unexecuted and nonnegotiable form.
The record clearly establishes that City Bank had actual knowledge that the travelers’ checks here involved were stolen prior to the time it made payments thereon. City Bank contends, however, it could not refuse to pay the checks upon presentation because the out-of-town banks were holders in due course. I do not agree with such contention.
In my opinion, City Bank was under no legal obligation to make such payments. When the checks were entrusted to defendant by City Bank, they concededly did not contain the *1043 name of any payee. It is a matter of common knowledge that without a signature and countersignature, a travelers’ check cannot be cashed. It is the countersignature, which, in effect, gives the paper its final form of negotiable currency (Sullivan v. Knauth, 161 App. Div. 148, 152, affd. 220 N. Y. 216). Thus, the checks, in the form in which they were in defendant’s possession at the time they were stolen, were clearly incomplete and nonnegotiable instruments. By operation of law, therefore, where incomplete instruments have not been properly delivered, as is the fact in this action, they will not, ‘ ‘ if completed and negotiated, without authority, be a valid contract in the hands of cmy holder, as against any person whose signature was placed thereon before delivery.” (Negotiable Instruments Law, § 34.)
There is no merit to City Bank’s argument that “delivery ” of the travelers’ checks was made when the blank instruments were entrusted to defendant. An act of transfer and intention are the essential criteria of a valid 11 delivery ’ ’ within the meaning and intent of the applicable statute. (Negotiable Instruments Law, § 2; Irving Trust Co. v. Leff, 253 N. Y. 359; Grannis v. Stevens, 216 N. Y. 583, 587.)
It is both the act and intent to make delivery which results in the instrument becoming operative according to its terms. Obviously, there was no intent by City Bank to have the travelers’ checks become operative upon their receipt by defendant. In the ordinary course of business, these checks became operative only when sold and delivered by defendant to a bona fide purchaser who then signed and countersigned same. Such a transaction must be deemed to be the clear intent of both parties to this action. Thus, when the checks were stolen before issuance in the proper and customary manner to a bona fide purchaser, “ delivery ” of these blank travelers’ checks never took place within the meaning and intent of the applicable statute (Sullivan v. Knauth, 161 App. Div. 148, affd. 220 N. Y. 216, supra). Thus, in view of the provisions of section 34 of the Negotiable Instruments Law, heretofore cited, and the fact that the travelers’ checks here involved were undelivered and incomplete, City Bank, contrary to its contention, was under no legal duty to make payment upon the presentation of such checks by the various out-of-town banks.
Moreover, as noted by Mr. Justice McGrvEKu in his decision denying City Bank’s motion for summary judgment, it may reasonably be concluded that, in the interests of “good business,” City Bank “would have paid these checks upon presentation even if the holders thereof were not holders in due course in order to preserve their highly-advertised safety, nego *1044 liability and marketability ” (First Nat. City Bank of N. Y. v. Frederics-Helton Travel Service, 22 Misc 2d 481, 483).
In order to sustain City Bank’s position in this action, it would be necessary to conclude that defendant was an absolute insurer under the provisions of the “ Trust Receipts ” it executed at City Bank’s request. A search by the court as well as by counsel of the relevant case law in this State indicates that the particular factual situation here involved and the language of these ‘1 Trust Receipts ” have never been litigated or interpreted by the courts in this jurisdiction. Cases cited by both sides in their briefs are readily distinguishable from the matter now before this court. The closest cases in point which concern negotiable instruments entrusted to a defendant, under a “ Trust Receipt ” agreement are Mellon Nat. Bank v. Citizens Bank & Trust Co. of Camden (88 F. 2d 128) and Peoples Sav. Bank of Grand Haven v. American Sur. Co. of N. Y. (15 F. Supp. 911). An analysis of these cases, however, shows that the scope of the indemnity agreements, in each instance, specifically embraced a much wider area of liability than that set forth in the “ Trust Receipts ” in the instant action. In the two named cases, the custodians agreed in the event of loss or theft “ to account for them in the same manner as if they had been regularly issued by its; and notice to said bank of such loss or theft or notice to stop payment of such cheques shall not be a bar to or prevent said bank from paying same when presented.” This provision placed an absolute liability upon the custodians of these checks. In the instant action, however, there is nothing in the language of the trust receipts which can reasonably be construed to impose similar liability upon defendant. Unlike the Mellon and Peoples Sav. Bank cases, defendant here was reqidred to give City Bank notice of loss. If, as City Bank urges, defendant was an insurer, such notice of loss, as in the two cases above referred to, would have been unnecessary or, at best, entirely discretionary. Likewise, it is to be noted that the posting of a bond by defendant in the case at bar is not mandatory, but is required only upon the request of City Bank. If defendant was an insurer, as City Bank claims, it would seem to follow that a bond would have been required by the agreement between the parties immediately upon loss by theft or otherwise.
In any event, in the opinion of the court, the relationship between City Bank and defendant is one created by an ordinary bailment. The assumption of “ full responsibility ” by defendant, as set forth in the provisions of the “ Trust Receipts ”, is merely an assumption of the usual responsibility of a bailee for hire, which, in this case, by specific contractual arrangement, *1045 also included the requirement of posting a bond upon request of City Bank. Concededly, a bailee may contract and thereby assume greater liability than that ordinarily imposed by law. The terms of the “ Trust Receipts ” here, however, contain no language which elevates this bailment to the status of an insurer or to any other status which would require a duty of care on the part of defendant greater than that of an ordinary bailee. Significantly, the “ Trust Receipts ” here involved were prepared by City Bank and it is elementary, therefore, that any ambiguity in the provisions thereof must be construed against it. If City Bank wished to protect itself against any loss resulting from the placing of the travelers’ checks in circulation by someone other than a purchaser, the “ Trust Receipts ” prepared by it could have, and should have, so provided (similar to the trust receipts involved in the Mellon and Peoples Sav. Bank cases, supra).
The general rules applicable to the duties of a bailee and his liability to a bailor where the bailment is stolen are well established. As an ordinary bailee, defendant is not an insurer and is charged only with reasonable care of the instruments entrusted to it (Castorina v. Rosen, 290 N. Y. 445, 448; Reisinger v. Pullman Co., 252 App. Div. 87, 89, affd. 277 N. Y. 679; Binney & Smith v. 41 East 42nd St. Realty Co., 147 N. Y. S. 2d 243, 245; Widder v. Knaris, 5 Misc 2d 914). It necessarily follows, therefore, that the burden of proof was on City Bank to establish defendant’s negligence in caring for the subject matter of the bailment (Stewart v. Stone, 127 N. Y. 500, 506; Claflin v. Meyer, 75 N. Y. 260; Carney v. Bares, 267 App. Div. 175, 176; Lader v. Warsher, 165 Misc. 559, 561; Fire Assn, of Philadelphia v. Fabian, 170 Misc. 665, 667). Contrary to City Bank’s contention, nothing in the record adduced upon the trial warrants the conclusion that defendant was in any way negligent in caring for the blank travelers’ checks entrusted to it or in preventing their theft. The evidence establishes that defendant’s place of business is located on the seventh floor of the Empire State Building in the Borough of Manhattan, City of New York. The management of this world-famous building employs the nationally-known Burns Detective Agency to protect the premises. The stolen travelers’ checks were secreted by defendant in a bottom drawer of a locked steel file cabinet, one of five such steel cabinets in its office. The credible testimony conclusively shows that both the lock on the steel cabinet and the lock on the outer office door were tested and found to be secure at the close of business on the evening immediately preceding the theft. There is nothing to indicate that the use of a safe by *1046 defendant rather than the locked steel file cabinet would have prevented the loss of these checks. Thus, in the opinion of the court, defendant exercised all the reasonable care under the circumstances which was required of it as an ordinary bailee.
The case of Rapid Safety Fire Extinguisher Co. v. Hay-Budden Mfg. Co. (37 Misc. 556) relied upon by City Bank, similar to the Mellon and Peoples Sav. Bank cases, is readily distinguishable from the instant action in that the language of the receipt there involved contained an unconditional promise to pay for any loss.
Judgment is rendered accordingly in favor of defendant dismissing the complaint upon the merits. The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.