Leonard Leigh Fine, J.
In this case (tried in the Small Claims part of the Civil Court) the plaintiff brings suit against the defendant, First National City Bank, alleging a breach of contract addressed to the defendant’s failure to make refund to the plaintiff with respect to the loss of travelers checks (Citibank). Notwithstanding the “Small Claims” status of this matter, the accepted use and negotiability of travelers checks throughout the world compels this court to file this written opinion. Moreover, a search of case law has failed to disclose any reported case that could be described as being specifically in point with respect to the instant subject matter. (For a discussion on a related subject see Sullivan v. Knauth, 220 N. Y. 216.)
The facts in brief are as follows: The plaintiff purchased a series of travelers checks, the face of each having two lines for the signature of the purchaser. One line, in the upper left hand corner, was presumably to be signed by the purchaser immediately upon delivery of the travelers checks to him, by the bank clerk in charge. The second line was provided for the countersignature of the purchaser at the time the checks were actually cashed or negotiated. In the instant case, contrary to the ‘ ‘ purchase agreement ’ ’ covering the original transaction, the plaintiff failed to sign the checks in the upper left-hand corner. Shortly thereafter the “blank” travelers checks were lost, which loss was immediately (and admittedly) reported to the defendant bank. Thereafter (notwithstanding the reported loss) the defendant honored the checks when they subsequently reached the bank. These checks now bore the name of one ‘ ‘ Joan Feeney ’ ’ on both the signature lines in the upper left-hand corner and the countersignature line. Since the two signatures were from “the same hand”, (admittedly not that of the plaintiff) the defendant bank honored the checks and made payment thereunder. The defendant bank refused to make payment to the plaintiff for his loss — hence this litigation.
The issue before the court, therefore, is whether the plaintiff can recover against the defendant for the travelers checks that *724 were admittedy lost, admittedly reported, and admittedly unsigned by the plaintiff in the upper left-hand corner, prior to the loss, notwithstanding the effect of the ‘ ‘ purchase agreement ” which required such signing, and which, in essence, provided that the defendant would not be obliged to make any refund in the event that the plaintiff purchaser failed to perform his obligation to sign.
In support of the bank’s refusal to make any refund to the plaintiff as a result of the loss of the checks, the bank relies upon the ‘ ‘ small print ’ ’ on the reverse side of each item cautioning the purchaser to £ £ immediately sign each check in the upper left-hand corner.” The defendant contends that its obligation becomes fixed only when the signature of the purchaser appears in the upper left-hand corner. It is this obligation, alleges the bank, which the public has come to rely upon as a fixed and absolute promise which makes travelers checks readily 'cashable throughout the world (American Express Co. v. Rona Travel Serv., 77 N. J. Super. 566; Hawkland, American Travelers Checks, 15 Buffalo L. Rev. 501, 510, 523 [1965-66]; 47 Yale L. J. 470 [1938]).
Further, argues the defendant (in an excellent submitted brief) if plaintiff had in fact signed the checks, in both the upper and lower corners, and then found them missing, he would not have a basis for a refund since any finder could insert his name on the payee line and negotiate the checks. The rationale suggested by the defendant, is that once a travelers check is signed in both the upper and lower corner, it becomes bearer paper and is equivalent to cash in the eyes of both the courts and the public. As stated in Emerson v. American Express Co. (90 A. 2d 236, 241 [D. C., 1952]): <£ the very nature of a travelers check is such that, having been signed and countersigned by the purchaser, it may be regarded as having been endorsed in blank and rendered subject to negotiation by delivery; and that a party cashing such a check containing indentical signature and counter-signature is entitled to collect from the issuer.” This is also the case, the defendant argues, where checks are lost in blank, since any finder could sign his name in the upper corner and later cash the checks by countersigning in the lower corner. (Uniform Commercial Code, § 3-115, subd. [2]; § 3-407, subd. [3].) Thus,, in American Express Co. v. Anadarko Bank & Trust Co. (179 Okla. 606, 608), the court observed: “In order to accomplish this [making travelers checks equivalent to cash], [American Express Co.] has deliberately prepared these travelers’ cheques in such *725 manner as to assure the person accepting them that, if the countersignature in the lower left-hand corner of the instrument is the same as that of the signature in the upper left-hand corner, he may accept the instrument without hesitation and without fear of any latent defect or imperfection. When the person cashing such cheque has met the requirements imposed upon him by the instrument itself, he should not be required to go back thereof at his peril.”
The requirement that purchasers of travelers checks comply with the purchase agreement by signing the checks at the time of purchase, the defendant asserts, is acknowledged by relevant case law. In Peoples Sav. Bank v. American Sur. Co. (15 F. Supp. 911, 913 [D. C. Mich., 1936]), the court stated: “ Unquestionably the peculiar value of travelers’ cheques is the facility with which they are cashed by merchants and bankers in all parts of the world without identification of the person presenting them and with no other protection against theft, fraud, or forgery than that afforded by identity of the signature placed upon the cheque at the time of its purchase with that made at the time of presentation for payment”. (Emphasis added.) The defendant argues further, that in American Express Co. v. Anadarko Bank & Trust Co. (supra), the Oklahoma Supreme Court recognized that a purchaser of travelers checks could sign his name in the upper left corner whenever he desired to but that, if he did not do so, the bank would be required to pay the holder of any checks lost or stolen in blank. It has been held (p. 608) that “If the countersignature in the lower left-hand corner of the instrument is the same as that of the signature in the upper left-hand corner * * * [a third person] may accept the instrument without hesitation and without fear of any latent defect or imperfection. ’ ’
It appears therefore that in the contention of the defendant, plaintiff, rather than defendant breached the contract and as such plaintiff’s claim is completely without merit.
With respect to the plaintiff’s position, he states that he relied upon the “public relations advertising” of the defendant that all lost travelers checks would be without loss to the original purchaser and readily refundable. In addition, the plaintiff states that this was his first and only purchase of travelers checks in his 68 years and that although he signed a paper (the original “purchase agreement”) the caveat of the signing of his name in the upper left-hand corner was neither given to him expressly by an agent of the bank, nor was his attention directed to the “ small print ” on the reverse *726 side of the travelers checks. In support of this position, a witness for the defendant bank who stated that he was a clerk who handled the transaction, could not state with certainty whether he gave any instructions to the plaintiff, other than that it was his ‘ ‘ usual practice ’ ’ in transactions involving the sale of travelers checks to give appropriate instructions to the purchasers upon delivery.
Upon the record of the trial, this court finds that the defendant bank failed to give a proper warning to the plaintiff referable to the legal importance of the signature of the plaintiff in the upper corner of the check and what the consequences of such failure could be. In matters of this kind a banking-institution is in a position of expertise charged with the highest obligation to exercise its business transactions in such manner as to protect the interest of the innocent, and usually, unknowledgeable public. This entire episode could have been avoided if the bank, through its clerk in charge, exercised the good, sound and accepted banking practice of overseeing the physical signing by the plaintiff purchaser prior to the delivery of the subject checks. This simple, and reasonable procedure was not employed by the bank. It now relies, however, upon the language, squeezed in tight print on the reverse side of an instrument, crowded with “ terms and conditions ”, which the defendant bank alleges constitutes a binding contract.
This court finds that the plaintiff is not bound by the small print in the alleged “contract”, set forth on the individual checks or the “purchase agreement” (which, if accepted by the court, would be exculpatory in nature) since the words of exculpation were not brought to the attention of the plaintiff in a manner that could be reasonably calculated to elicit an acceptance or rejection by him. Hence, by the application of basic contract law (see 9 N. T. Jur., Contracts, § 21 and cases therein cited) there was no contract in existence referable to the alleged obligation by the plaintiff to sign the upper left-hand corner of the checks, and accordingly this court can give no weight to the defendant’s argument on this issue.
To find for the bank under the circumstances of this case would, in effect, be a callous disregard of the overriding interest of justice in the matter before this court; for justice is neither blind nor can it disregard those areas of wrong that plead for remedy and correction. Such is our law- — a law which is the evolution of accepted practice, common sense and applied logic. Such is our law— a law which does not live in a vacuum, but depends upon the continued nourishment of reason and *727 understanding, paralleled only with one’s deep sense of conviction to the end that substantial justice is done. It is in this posture that this court awards judgment to the plaintiff in the demanded sum of $300.