## AMERICAN EXPRESS CO. v. ANADARKO BANK & TRUST CO.

No. 25321.   April 13, 1937.

Robert E. Owens (W. F. Wilson and W. F. Wilson, Jr., of counsel), for plaintiff in error.

Pruett & Wamsley and Melton & Melton, for defendant in error.

PER CURIAM. This is an appeal from a judgment of the district court of Caddo county. The parties occupy the same positions in this court as they did in the trial court and will be referred to as plaintiff and defendant. The plaintiff in its petition alleged in substance that it had delivered certain travelers' cheques to the defendant in trust for the purpose of sale and remittance; that the defendant had sold certain of said cheques and had failed to remit in payment therefor. Wherefore plaintiff prayed judgment for the amount due on said sale. The defendant in its answer admitted the trust relation and the sale of the cheques as claimed by the plaintiff, but averred that it had subsequently cashed other travelers' cheques of the plaintiff which had been presented to the defendant in due course of business, and that plaintiff had refused to honor said cheques and defendant thereupon tendered said cheques, together with the sum of $24.90, the difference between the amount of the cheques cashed by it and the amount claimed by the plaintiff, in full payment of plaintiff's claim. Reply of plaintiff alleged that the tendered cheques had been stolen from one of its agents and were incomplete instruments when the asportation took place, and that consequently the plaintiff was not liable thereon. The defendant thereupon pleaded that it was a bona fide holder in due course and for full value of said cheques and that the plaintiff was estopped to deny their validity. The plaintiff by further reply denied all material allegations of new matter set up in the pleadings of the defendant. The cause was tried, upon the issues thus framed, to the court without a jury, and resulted in a judgment in favor of the defendant. The plaintiff appeals from the judgment thus rendered and the order overruling its motion for new trial. The essential facts are not in serious dispute. The plaintiff does a world-wide business in certain instruments which they denominate travelers' cheques. These instruments are similar in size and shape to the national currency and are designed to take the place of currency and to pass current as money. In order to promote and facilitate such business, the plaintiff maintains and operates offices and agencies in principal cities and towns throughout the civilized world. It furnishes such offices and agencies with supplies of said travelers' cheques; these vary only in the denomination and the identifying numbers placed thereon, but are of the same general pattern and form, and are ordinarily in the following language:

"U. S. Dollar Travelers Cheque
"When countersigned below with this signature ----------------------
NO. 000 000
cipher, cipher, cipher
cipher, cipher, cipher

----------------- -------- --------
"Before cashing write here city and date.
    "American Express Company.
"Affiliated with the Chase National Bank of the City of New York, At its paying agencies.
"Pay this cheque from our balance to the order of ----------------------$10.00
"In United States: Ten Dollars.
"In all other countries at current buying rate for bankers' cheque on New York.
        "Geo. Weston, Treasurer.
"Countersign here in presence of person cashing

----------------------------
"This cheque is redeemable only at the company's offices and bankers in United States."

These cheques are engraved and lithographed in large quantities and sent out to the respective offices and agencies in the above form, with directions to the office or agent to guard and protect the same as they would other bearer securities. During the year 1931, the plaintiff furnished its agent, Gorham State Bank at Gorham, Kan., with a number of travelers' cheques in substantially the form above set forth. This bank was held up and robbed on October 8, 1931. The robbers took everything in the safe, including all the travelers' cheques therein which belonged to the plaintiff. On December 31, 1931, the defendant cashed for E. A. Dunn, one of its customers, certain travelers' cheques which bore the signature of Roy Bison in the space designated for that purpose in the upper left-hand corner of each instrument and the countersignature of the same party in the lower left-hand corner of each instrument. It developed that these cheques were a part of those which the plaintiff had previously delivered to the State Bank of Gorham, and the evidence supports the contention of the plaintiff that they were stolen from said bank and that the name Roy Bison was written in the spaces provided for signatures and countersignatures, and that they were then negotiated to the defendant. It is conceded that the defendant was an innocent purchaser of said cheques for full value and in due course of business. The plaintiff contends, however, that it is not liable on said cheques

to the defendant for the reason that the cheques as delivered to the State Bank of Gorham were incomplete instruments within the Negotiable Instruments Law, and that there was never any delivery of said instruments within the contemplation of the Negotiable Instruments Law. We will discuss these contentions in their inverse order. Under the Negotiable Instruments Law, where an instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. Section 11315, O. S. 1931. The fact that a complete instrument is stolen from its maker prior to its delivery does not constitute a defense against a bona fide holder for value. Angus v. Downs, 85 Wash. 75, 147 P. 630, L. R. A. 1915E, 351; and as was said in Gruntal v. United States Fidelity & Guaranty Co., 254 N. Y. 468, 173 N. E. 682, 73 A. L. R. 1337:

"Both at common law * * * and under the Negotiable Instruments Law a holder in due course of negotiable paper takes good title even from a thief."

If the travelers' cheques were complete instruments within the meaning of the Negotiable Instruments Law at the time they were stolen from the Gorham State Bank, any question of delivery is eliminated from further consideration.

On the other hand, the Negotiable Instruments Law (section 11314, O. S. 1931), provides:

"Where an incomplete instrument has not been delivered it will not, if completed and negotiated without authority, be a valid contract in the hands of any holder, as against any person whose signature was placed thereon before delivery."

In the case of City National Bank of Galveston v. American Express Co. (Tex. Com. App.) 16 S. S. (2d) 278 (affirming American Express Co. v. City National Bank [Tex. Civ. App.] 7 S. W. [2d] 886), similar travelers' cheques of the plaintiff were held to be incomplete until the signature of purchaser thereof had been affixed thereto. These cases appear to be the only instances where the courts have passed upon the exact question herein involved. With all due deference to the Texas courts, we find ourselves unable to agree with the conclusion reached by them, with respect to the nature of travelers' cheques while in the hands of a selling agency. It will be noted from examination of the form of the travelers' cheque above shown that when the cheques are delivered to the selling

agency, while it has thereon four blank spaces which are to be filled out by the person using the cheques, there remains nothing to be done by either the company or its issuing agent. At the time it is delivered to the purchaser he is ordinarily required to write his signature in the space provided for that purpose in the upper left-hand corner. Should he omit to do so, however, there is nothing on the face of the instrument which would prevent his completing it later. On the contrary, the instrument provides that the signature appearing in the space left for that purpose in the upper left-hand corner shall be the sign manual of the rightful holder, and that the same signature in the space provided for that purpose in the lower left-hand corner shall constitute the countersign whereby all doubts are dispelled, and any payee of said instrument is assured that he can accept the same with the same freedom that he would the tender of actual money or currency. The instrument provides further that the name of the city where and the date on which the cheque is cashed, together with the name of the payee, are to be inserted by the original holder at the time of cashing. Plaintiff, in effect, concedes that when the signature constituting the sign manual is affixed in the presence of the issuing agent, all other blanks in the instrument may thereafter be completed away from the issuing office and without in any way affecting the validity of the instrument. If the signature appearing as the sign manual must be placed on the instrument in the presence of the issuing agent before such instrument can be deemed complete, then the issuing agent should be required to attest to such fact, otherwise a party tendered such cheque can have no way of telling whether the signature thereon is that of a purchaser or that of a thief. Otherwise lacking such, a person would be very foolish indeed to accept any travelers' cheque which might be tendered to him. This would be contrary to the intent and purpose of the plaintiff, since the plaintiff in every way possible seeks to have its cheques take the place of money and to pass current as money. In order to accomplish this it has deliberately prepared these travelers' cheques in such manner as to assure the person accepting them that, if the countersignature in the lower left-hand corner of the instrument is the same as that of the signature in the upper left-hand corner, he may accept the instrument without hesitation and without fear of any latent defect or imperfec-

tion. When the person cashing such cheque has met the requirements imposed upon him by the instrument itself, he should not be required to go back thereof at his peril. Likewise, if the cheques are to take the place of money and pass current as money, they should be subjected to the same rules and immunities which rest upon money under like circumstances. The great weight of authority supports the rule that when one comes into possession of stolen money bona fide and for valuable consideration, his title thereto is superior to that of the true owner. See First National Bank of Birmingham v. Gilbert & Clay, 123 La. 846, 49 So. 593, 25 L. R. A. (N. S.) 631, and notes under the L. R. A. citation.

In Cooke v. United States, 91 U. S. 389, 23 L. Ed. 237, it was held that treasurer's notes printed and ready to issue, which were stolen and placed in circulation, passed title to bona fide purchaser for value, since the notes were intended to circulate and take the place of money. This is the general rule. See 3 R. C. L. pp. 1000 and 1001, par. 210.

In the case before us, we find that the defendant accepted the travelers' cheques of the plaintiff as money, and that the defendant was without any knowledge or possible knowledge of any infirmity therein. The instruments on their face were genuine, and under these circumstances the plaintiff was precluded from denying liability. The judgment of the trial court was in all respects proper.

Judgment affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.