77 N.J. Super. 566 (1962)
187 A.2d 206
AMERICAN EXPRESS COMPANY, AN UNINCORPORATED ASSOCIATION, PLAINTIFF,
v.
RONA TRAVEL SERVICE, INC., EDGAR JOSEPHSON, JR., AND EDWIN W BLODGETT, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 19, 1962.
*567 Mr. Herbert M. Guston for the plaintiff (Messrs. Hannoch, Weisman, Myers, Stern & Besser, attorneys).
Mr. Milton Bruck for the defendants (Messrs. Bruck & Bigel, attorneys).
COLLESTER, J.S.C.
This matter is before the court on a motion for summary judgment brought by the plaintiff American Express Company against the defendants Rona Travel Service, Inc. (hereinafter referred to as Rona), Edgar Josephson, Jr. and Edwin W. Blodgett. A countermotion for summary judgment has been made by the defendants. Plaintiff's action is based upon an alleged breach of a trust agreement resulting in damages. The material facts admittedly are not in dispute.
Rona, a travel agency located in Passaic, New Jersey, has sold American Express travelers checks to the public as plaintiff's subagent since 1943.
The travelers checks are a form of commercial paper which are delivered by the plaintiff to the subagent bearing the signature of one of plaintiff's officers. When the subagent *568 sells a check to the customer, the latter is required to sign the check at a designated place thereon at the time of purchase. When the check is thereafter cashed by the customer he is required to countersign the same, at which time the person or institution cashing the check may compare the countersignature with the signature placed on the check at the time of sale.
During the night of October 13, 1960, while Rona's office was closed, it was burglarized. The office safe was broken open and American Express travelers checks in the face amount of $4,240 were stolen. The following morning Rona reported the burglary to the plaintiff and an investigation followed. The thieves were never apprehended. During the next several weeks the stolen travelers checks were cashed in various restaurants, taverns, shops and banks located in Pittsburgh and New York. The two signatures of the "assumed purchaser" were on the face of the checks. Thereafter the checks were presented to plaintiff by the bona fide holders thereof and payment was duly honored.
Plaintiff's claim to recover damages is based upon certain trust agreements entered into with the defendant Rona. The agreements consist of three documents  a trust agreement document, a letter agreement, and trust receipts signed by defendant Rona at the time plaintiff delivered the travelers checks to it.
The trust agreement document provides, inter alia, that the
"Subagent shall take such measures to safeguard and protect all unsold financial paper * * * as a prudent person would take to safeguard and protect a like amount of his own cash. Subagent shall also observe any express instructions which may be given by American Express from time to time with respect to such safeguarding and protection." (Emphasis added.)
The trust receipts signed by defendant provide that
"The selling agency hereby agrees and undertakes * * * to observe the same care and protection in the custody of the said forms (travelers checks) as should be given to a like amount of currency belonging to the selling agency."
*569 The letter agreement dated April 13, 1960, duly signed as accepted and agreed upon by Rona is as follows:
"In order to reduce the possibility of loss due to burglary or hold-up, we are setting forth below certain conditions in connection with the Travelers Cheques which will be held in trust by you for the American Express Company.
These conditions are:
1. The major portion of the Travelers Cheque stock to be kept at all times in safe deposit box at your local bank.
2. The supply of Travelers Cheques on the premises whenever the office is closed shall not exceed $1,000 and shall be locked in a safe or other adequate safekeeping facility.
Therefore, in the event of a loss while your office is open, American Express will accept responsibility only for a reasonable working supply of Travelers Cheques; while your office closed, American Express will accept responsibility only up to $1,000; provided, of course, the above conditions are complied with. You will be held responsible for any losses resulting from failure to comply with these conditions. * * *" (Italics by American Express.)
The trust agreement document also contained an indemnification agreement whereby the individual defendants Edgar Josephson, Jr. and Edwin W. Blodgett personally and individually agreed to indemnify American Express Company against any and all loss, damage, claim, liability or expense resulting from the failure of the subagent (Rona) to perform or fulfill any obligation to be performed or fulfilled by the subagent by the terms of the trust agreement.
It is undenied that the defendants, while their office was closed on the night of October 13, 1960, left in their office safe travelers checks with a face value of $4,240. It was admitted that Rona had a safe deposit box at the New Jersey Bank and Trust Co., four doors north of the premises, and another safe deposit box at the Bank of Passaic and Clifton, four doors south of the premises. When the defendant Edgar Josephson, Jr. was asked why they kept so many travelers checks on hand in the safe when they knew that they were *570 "only protected to the extent of $1,000," he replied that they generally sold most travelers checks on Friday and Saturday nights when banks are closed and the safe deposit boxes were not available. He further stated to plaintiff's representative that he knew they were liable but thought there would be no problem because they were fully covered by insurance should the stolen travelers checks be negotiated above the $1,000 which American Express, in its letter agreement of April 13, 1960, had agreed to absorb.
Following the burglary Rona was advised by the plaintiff that it would redeem the stolen checks which had been negotiated to bona fide holders, and would advise Rona as the checks were received so Rona would know whether or not the checks had been destroyed by the thieves or had been duly negotiated and cashed.
The affidavits submitted further show that Mr. Josephson, for Rona, thereafter never objected to redemption of the checks by the plaintiff and acknowledged liability under the trust agreements. He blamed nonpayment on his insurance company which insured Rona for burglary losses.
It is conceded by all parties that the trust agreement was breached by the defendants when they kept travelers checks having a face value of more than $1,000 in the office safe on the night of October 13, 1960 while the office was closed. It is also conceded that plaintiff made no effort to notify persons or institutions, who might cash travelers checks when presented for payment, to dishonor the checks involved. Plaintiff has redeemed all checks totaling $4,240.
The parties assert that the issues raised herein are novel in New Jersey since our courts have never had occasion to consider the rights and liabilities of parties to a travelers check.
The defendants contend that under the trust agreements they were to be held responsible only for any losses resulting from their failure to comply with the conditions thereof. They contend that plaintiff sustained no loss as contemplated by reason of the nature of the stolen travelers checks themselves.
*571 It is defendants' position that travelers checks are negotiable instruments and the negotiation thereof is governed by the statutes relating to negotiable instruments, R.S. 7:1-1 et seq. It is argued that at the time the checks were stolen they were incomplete instruments within the meaning of R.S. 7:2-15 which states:
"Where an incomplete instrument has not been delivered it will not, if completed and negotiated, without authority, be a valid contract in the hands of any holder as against any person whose signature was placed thereon before delivery."
It is contended that at the time of the theft the checks were "incomplete instruments" and thus nonnegotiable since they did not contain the name of the payee in that they did not contain the signature and countersignature of a lawful purchaser. It is further contended that no "delivery" of the checks was made in contemplation of the statute since the "delivery" was unauthorized, it having been accomplished by a theft.
Defendants cite as authority for their position the decision rendered in First National City Bank of New York v. Frederics-Helton Travel Service, Inc., 29 Misc.2d 1041, 209 N.Y.S.2d 704 (Sup. Ct. 1961). In that case the bank brought an action to recover damages for travelers checks that the bank had delivered to the agency for sale and which had been stolen therefrom, cashed and thereafter honored by the bank upon presentment. The court held that the checks in the agency's possession at the time of the theft were incomplete instruments since they did not contain the name of the payee, viz., the signature of the lawful purchaser; that they were completed without authority and delivered without authority. The court held that since they were not negotiable instruments under the statute, section 34 of the Negotiable Instruments Law (identical to R.S. 7:2-15), the persons who held such checks and presented them for payment were not holders in due course to whom the bank could not refuse payment.
*572 In the case sub judice defendants assert that the stolen travelers checks were not valid negotiable instruments; plaintiff was under no legal duty to honor the same upon presentation, and it should have refused payment upon presentment. Defendants claim that payment by plaintiff when it was not legally obligated so to do was a voluntary payment and not a "loss" for which they can be held liable.
Plaintiff, on the other hand, contends that it is legally obligated to honor travelers checks which had been stolen, regardless of the provisions of the Negotiable Instruments Law. It contends that its obligation stems from representations made by it to pay when a travelers check is countersigned with the same signature that appears on the upper left-hand corner on the face of the instrument. Judicial notice has been taken of such representations. See American Express Company v. Anadarko Bank & Trust Co., 179 Okl. 606, 67 P.2d 55, 110 A.L.R. 972 (Sup. Ct. 1937). It contends that an obligor may by contract or other representation increase his liabilities beyond those to which he might be subject under the provisions of R.S. 7:1-1 et seq. (Cf. Kelly v. Universal Oil Supply Co., 65 Cal. App. 493, 224 P. 261 (Cal. D.C. App. 1924).
It further alleges that under the Anadarko case, supra, travelers checks in the possession of a selling agent, such as Rona, are complete instruments, and that under R.S. 7:2-16 a valid delivery of the instrument is conclusively presumed. See also Transcontinental & Western Air v. Bank of America, 46 Cal. App.2d 708, 116 P.2d 791 (Cal. D.C. App. 1941).
In my opinion the liability of the defendants in this case is not governed by the Negotiable Instruments Law. We are concerned with the construction and interpretation of the agreement made between the parties as principal and agent.
The three writings involved, namely, the trust agreement document, trust receipts and the letter agreement of April 13, 1960, are all parts of one transaction relating to the same subject matter. They are to be read and interpreted as one instrument, whether or not they refer to each other. *573 Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 463 (App. Div. 1958); Lawrence v. Tandy & Allen, Inc., 14 N.J. 1, 6 (1953); Schlossman's, Inc. v. Radcliffe, 3 N.J. 430, 435 (1950); Friendly Consumer Discount Co. v. Foell, 39 N.J. Super. 410, 415 (App. Div. 1956).
The language of the three writings which thus constitute the trust agreement between the parties clearly indicates that the travelers checks were considered the equivalent of cash. The trust agreement document specifically provides that Rona shall protect travelers checks in its possession as it would a like amount of its own cash. The trust receipts contain a similar provision. The letter agreement, which prescribes conditions for the safekeeping of travelers checks and the limitation upon the face value of such checks which could be kept in Rona's office while it was closed, further supports the position that the parties considered the checks the equivalent of cash.
I think it pertinent to the issue to observe that the public generally considers travelers checks, which bear on the face thereof the signature and countersignature of the holder, the equivalent of cash. In Peoples Savings Bank of Grand Haven v. American Surety Co., 15 F. Supp. 911 (D. Mich. 1936), the court said:
"Unquestionably the peculiar value of travelers' cheques is the facility with which they are cashed by merchants and bankers in all parts of the world without identification of the person presenting them and with no other protection against theft, fraud, or forgery than that afforded by identity of the signature placed upon the cheque at the time of its purchase with that made at the time of presentation for payment. Without this peculiar attribute, marketability of the cheques would be so seriously affected as to render them of little value. Their salability depends upon public confidence that they will surely be paid. Because of this, there has arisen the well-established practice on the part of the issuing bank or express company to pay the cheques even after notice or knowledge of loss, theft, or robbery. * * * They are freely accepted not only by banks but in remote rural communities. That they are cheques which are intended to be and are freely negotiable cannot be gainsaid. Refusal of payment by the issuing bank or trust company because of defenses ordinarily available would be practically destructive of the entire business of placing such checks in circulation." (at p. 913) *574 See also language used by courts in other jurisdictions to similar effect, American Express Co. v. Anadarko Bank & Trust Co., supra; Transcontinental & Western Air v. Bank of America, supra; Sullivan v. Knauth, 161 App. Div. 148, 146 N.Y.S. 583 (App. Div. 1914), affirmed 220 N.Y. 216, 115 N.E. 460, L.R.A. 1917F, 554 (Ct. App. 1917); Samberg v. American Express Co., 136 Mich. 639, 99 N.W. 879 (Sup. Ct. 1904); Mellon National Bank v. Citizens Bank and Trust Co., 88 F.2d 128 (8 Cir., 1937); Venable v. American Express Co., 217 N.C. 548, 8 S.E.2d 804 (Sup. Ct. 1940).
It is also quite clear that the defendants considered the travelers checks the equivalent of cash, and that once stolen such checks would be freely circulated and upon presentation bearing the signature and countersignature of the purported purchaser thereof, would be freely honored by unsuspecting banks and other persons to whom they were presented for payment, and finally would be honored by plaintiff upon receipt thereof. This understanding is all the more certain in view of the fact that Rona is a travel agency which has been selling such checks to the public since 1943 and presumably able to sell travelers checks because they are universally regarded as cash equivalents.
After plaintiff had been notified of the burglary, Mr. Josephson, Rona's president, was informed that the stolen checks would be honored by the plaintiff. He made no protest. He admitted liability in view of the breach of the trust agreement and claimed the benefit of the $1,000 protection given by plaintiff in its letter agreement. He also stated that Rona was insured for the loss.
It is further evident that Rona had obtained insurance coverage which presumably covered such a loss, and thus had complied with the terms of the trust agreement which required Rona to protect such checks in its possession as it would a like amount of its own cash.
An important aid in the interpretation of contracts is the practical construction placed on the agreement by the *575 parties themselves. The process of practical interpretation and application is a further indication by the parties of the meaning which they have placed upon the terms of the contract they have made. Courts give great weight to these expressions, be they acts or declarations. 4 Williston on Contracts, sec. 623, pp. 789-790. In Journeymen Barbers, etc., Local 687 v. Pollino, 22 N.J. 389, 395 (1956), our Supreme Court stated that where the meaning of contractual language is doubtful, the best guide is furnished by the parties' construction as manifested by their conduct. See also Macfadden v. Macfadden, 49 N.J. Super. 356, 360 (App. Div. 1958); William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 496 (Ch. Div. 1953); Washington Construction Co., Inc. v. Spinella, 13 N.J. Super. 139, 142 (App. Div. 1951); Kingston Trap Rock Co. v. Eastern Engineering Co., 132 N.J.L. 254, 259 (E. & A. 1944); Lippincott v. Content, 123 N.J.L. 277, 279 (E. & A. 1939); Thomsen v. Riedel, 114 N.J.L. 379, 383 (E. & A. 1935).
Giving due consideration to the terms of the agreement between the parties, the well established meaning and understanding of the public and the defendants herein that travelers checks are considered the equivalent of cash, and the interpretation given by the parties hereto as indicated by their declarations and actions as appears in the affidavits presented to the court, it cannot logically be controverted that the travelers checks in defendants' possession were considered the equivalent of money based on the face value set forth on the checks.
If the travelers checks were considered the equivalent of cash money, then the provisions relating to their safekeeping and the responsibility resulting from a theft have an intelligent meaning. They mean that the plaintiff would honor the checks, when stolen and later presented to it by a bona fide holder. They mean that plaintiff will bear the loss incurred by honoring such checks up to the face value thereof of $1,000, and that the defendant Rona would pay to plaintiff all money expended in honoring such checks above said $1,000.
*576 If this were not the meaning of the trust agreement between the parties, then there would be no need to employ the language contained in the trust agreement document, the trust receipts and the letter agreement of April 13, 1960. If the travelers checks were considered by the parties to be incomplete and undelivered instruments under the Negotiable Instruments Law, and thus nonnegotiable, and that plaintiff would accordingly refuse payment when presentment was made, then no such agreement would be required and no loss could ever occur. The travelers checks in defendants' possession would thus be mere scraps of paper, having no value whatsoever, and an agreement by defendant to pay the loss above $1,000 and by plaintiff to assume the loss below $1,000 would be meaningless.
I am satisfied that the agreement between the parties must be construed to mean that travelers checks in defendants' possession are the equivalent of money and were in effect considered as cash; that stolen travelers checks which were subsequently presented to the plaintiff for payment by bona fide holders thereof would be honored; that the loss sustained by honoring said checks would be borne by plaintiff up to $1,000 of the face value of such checks, and that all loss sustained by the plaintiff in honoring the face value of such checks above $1,000 would be borne by the defendants.
Contrary to the contention of the defendants, I am of the opinion that the plaintiff has sustained a loss within the contemplation of the parties under their agreement.
Accordingly, I am satisfied that plaintiff is entitled to a summary judgment against the defendants in the amount of $3,240, together with lawful interest thereon from April 11, 1961, the date plaintiff made demand upon defendants for payment. The countermotion by defendants for summary judgment is denied.
A judgment in accordance with this opinion, duly consented to as to form or settled upon notice pursuant to R.R. 4:55-1 will be submitted to the court.