## HABERSIN CAMERA SHOPS, Inc. v. AMERICAN EXPRESS COMPANY.
### No. 159806.
Small Claims Court, Dade County.

March 25, 1967.

Richard C. Carter, Jr., Miami, for plaintiff.

Walton, Lantaff, Schroeder, Atkins & Wahl, Miami, for defendant.

SIDNEY L. SEGALL, Judge.

Final judgment is rendered in favor of plaintiff for $780 (including interest) plus costs in the sum of $12.40.

The material facts are not in dispute. The plaintiff is a holder for value of $600 worth of traveler's cheques.

Plaintiff is an operator of a camera shop in Miami. In the usual course of business plaintiff sold a camera and camera equipment to several different customers who presented certain traveler's cheques sued on herein, in payment for said merchandise. The checks were completed in each instance except for the counter signature in the lower left hand corner thereof. The

customers represented themselves to be the rightful owners and bona fide purchasers of said checks by the presentation of identification cards of the persons represented in the "sign manual" (in the upper left hand corner). The counter signatures at the time of the purchase were then executed in the presence of the plaintiff by the purchasers of the merchandise.

The evidence is uncontroverted that the checks in question were stolen and negotiated by impostors. No negligence on the part of the plaintiff herein is alleged by the defendant. In fact, the counter signatures appear almost perfect imitations of the signatures in the "sign manual".

Plaintiff, in substance, contends that he is entitled to recover, even though the counter signature was forged and cites in support of his position American Express Company v. Anadarko Bank and Trust Company, 179 Okl. 606, 67 P.2d 55.

In that case the bank cashed certain traveler's checks for a customer, which had been allegedly stolen from an agent of the American Express Company. The Anadarko Bank and Trust Company was also an agent for the American Express Company and owed the express company certain monies for the sale of traveler's checks made by the said bank in the ordinary course of business. The American Express Company demanded payment for said traveler's checks sold by Anadarko and the bank refused to pay. Whereupon, the American Express Company brought suit for the monies owed by the bank and in said suit the bank filed a claim of set-off for the forged checks it cashed for its customer.

The American Express Company contended that the Negotiable Instruments Law applied. However, the Oklahoma Supreme Court held that the traveler's checks the bank cashed for its customer were like money and stated —

> When the person cashing such checks has met the requirements imposed upon him by the instrument itself, he should not be required to go back thereof at his peril. Likewise, as the checks are to take the place of money and paper current as money, they should be subjected to the same rules which rest upon money under like circumstances. The great weight of authority supports the rule that when one comes in possession of stolen money bona fide and for valuable consideration, his title thereto is superior to that of the true owner.

In American Express Company v. Rona Travel Service, Inc., 187 A.2d 206 (N. J. 1962), the American Express Company prevailed in a suit against one of its agents where blank traveler's checks had been stolen from said agency and were completed

by persons unknown and negotiated in the usual course of business. In Rona the Superior Court of New Jersey stated —

> In the case sub judice defendants assert that the stolen traveler's checks were not valid negotiable instruments; plaintiff was under no legal duty to honor the same upon presentation, and it should have refused payment upon presentment. Defendants claim that payment by plaintiff when it was not legally obligated so to do was a voluntary payment and not a loss for which they can be held liable.

> Plaintiff [American Express Company] on the other hand contends that it is legally obligated to honor traveler's checks which had been stolen regardless of the provisions of the Negotiable Instruments Law. It contends that its obligation stems from representations made by it to pay when a traveler's check is counter signed with the same signature that appears on the upper left hand corner on the face of the instrument. Judicial notice has been taken of such representations. See: American Express Company v. Anadarko Bank and Trust Company, 179 Okl. 606, 67 P. 2d 55, 110 A.L.R. 972.

The New Jersey court held that the liability of the defendants in that case was not governed by the Negotiable Instruments Law.

Notwithstanding my ruling to the contrary in the case of Habersin v. American Express Company, case no. 106355 (April 15, 1963), I am persuaded that the analogy of the traveler's checks to money is a practical rule in the commercial and business world, particularly in view of representations that are made by the American Express Company in the sale of such checks. Moreover, in the prior case, the plaintiff was not represented by counsel and the court, therefore, did not have the benefit of research in support of plaintiff's legal position.

Consonant with the view that traveler's checks are the equivalent of cash, and the public generally considers them as such, the U. S. District Court, in Peoples Savings Bank v. American Surety Co., 15 F. Supp. 911 (D. Mich. 1936), stated at page 913 —

> Unquestionably the *peculiar value of traveler's cheques is the facility with which they are cashed by merchants and bankers in all parts of the world without identification of the person presenting them and with no other protection against theft, fraud, or forgery than that afforded by identity of the signature placed upon the cheque at the* time of its purchase with that made at the time of presentation for *payment.* Without this peculiar attribute, marketability of the cheques would be so seriously affected as to render them of little value. *Their salability depends upon public confidence that they will surely be paid.* Because of this, there has arisen the well-established practice on the part of the issuing bank or express company to pay the cheques even after notice or knowledge of loss, theft, or robbery. It is doubtless because of this common practice that the trust receipt in evidence

provides for reimbursement to the Mellon National Bank in event of loss or theft notwithstanding notice thereof before payment. The essential value and purpose of a traveler's cheque is that it is a cashier's cheque payable by a bank or other corporation of unquestioned financial standing and integrity which is placed by the issuing bank in the hands of agent banks for delivery to any person who will pay the face value plus a small premium. *It is payable to such individuals without identification and merely upon corresponding signatures.* They are freely accepted not only by banks but in remote rural communities. That *they are cheques* which are *intended to be* and are *freely negotiable* cannot be gainsaid. *Refusal of payment* by the issuing bank or trust company because of defenses ordinarily available *would be practically destructive of the entire business of placing such cheques in circulation. The special attributes and functions of these cheques have long been recognized.* (Citing authorities.) (Italics added.)

On the basis of the foregoing, and for the reasons stated, plaintiff is legally entitled to recover.